162 So. 37

**FROST LUMBER INDUSTRIES, Inc., v.
UNION POWER CO., Inc.**

No. 33235.

April 1, 1935.

Rehearing Denied May 27, 1935.

Chandler & Chandler, of Shreveport, Shotwell & Brown, of Monroe, and Hugh M. Wilkinson, of New Orleans, for appellant.

Lee, Gilmer & Lee, of Shreveport, for appellee.

ROGERS, Justice.

On January 12, 1917, the Frost-Johnson Lumber Company, now known as the Frost Lumber Industries, Inc., and the Union Saw Mill Company, conveyed to the Federal Petroleum Company an undivided one-half interest in all the minerals and mineral rights under certain lands of the vendors in the parishes of De Soto, Sabine, Natchitoches, Ouachita, and Union. On the same day the parties entered into a joint operating contract providing for the development by any one of them of any part of the land conveyed.

On October 15, 1917, the Union Saw Mill Company sold to the Frost-Johnson Lumber Company all the land then owned by the vendor in the parishes of Union and Ouachita. The deeds contain certain stipulations regarding the oil, gas, and mineral rights, and refer also to the former deed to the Federal Petroleum Company.

On December 23, 1920, the Frost-Johnson Lumber Company and the Federal Petroleum Company sold to the Union Power Company all the gas and gas rights under the land that is described in the mineral deed from the Frost-Johnson Lumber Company to the Federal Petroleum Company, and on the same day the parties entered into an operating contract providing for the development and production by them of the minerals respectively owned by each.

All the instruments were recorded in the parishes where the lands affected are situated.

This suit was commenced by the Frost Lumber Industries, Inc., as an action of jactitation, or slander of title, for the purpose of obtaining a decree canceling and erasing from the public records the muniments of title under which the Union Power Company, Inc., holds the gas rights on the lands situated in the parishes of De Soto and Sabine. The suit was converted into a petitory action by the Union Power Company, Inc.

The defendant first filed a motion for a bill of particulars, which was overruled. Defendant then filed a plea of estoppel which was referred to the merits. Thereafter defendant filed its answer admitting the ownership and possession of the land by plaintiff and setting up a title in itself

to the gas and gas rights in and under the land.

Plaintiff filed a plea of ten years' prescription liberandi causa against defendant's title to the mineral rights. But defendant set up in its answer that the running of the prescription pleaded was interrupted by agreements between the parties, agreements between the plaintiff and other parties, resolutions of the board of directors of the plaintiff company, judicial allegations in other suits by plaintiff, letters written by the officers of the plaintiff company, and the execution of certain leases.

After a trial on the merits, the court below rendered judgment decreeing the Frost Lumber Industries, Inc., to be the owner in legal possession of the property in dispute, free from any claim of the Union Power Company, Inc., to the gas and gas rights lying thereunder. From this judgment the Union Power Company, Inc., has appealed.

Inasmuch as there has been no development under the rights of servitude acquired by the defendant on the lands of the plaintiff, defendant's rights have become prescribed, unless the running of prescription has been interrupted by the documents on which the defendant relies. That is the sole question presented in the case.

■ Before reviewing the facts disclosed by the record, we shall discuss the law relied on by the parties in support of their respective contentions. Before doing this, however, we think it may be well to observe that, where noncontiguous tracts of

land are embraced in one mineral deed, each tract represents a distinct servitude. And the development and production of minerals from one of the tracts, no matter how extensive such operations may be, will not interrupt the running of prescription on the other tracts. Lee v. Giauque, 154 La. 491, 97 So. 669; Keebler v. Seubert, 167 La. 901, 120 So. 591; Arent v. Hunter, 171 La. 1059, 133 So. 157.

■■ The defendant predicates its claim of interruption of prescription on the general rule set out in article 3520 of the Civil Code reading as follows: "Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed."

Defendant, in support of its claim, also cites the cases of Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co., 149 La. 100, 88 So. 723, 724; Sellington v. Producers' Oil Co., 152 La. 81, 92 So. 742, 743; Lewis. v. Bodcaw Lumber Co., 167 La. 1067, 120 So. 859, 860; White v. Ouachita Natural Gas Co., 177 La. 1052, 150 So. 15. On the other hand, plaintiff relies upon practically the same cases in support of its demands. It therefore becomes necessary for us to review the cases in order to ascertain their bearing and effect upon the point at issue.

The first case referred to by the parties. is that of Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co. In that case the Louisiana Coal & Lumber Co., Limited, un-

der which the defendant claimed, had acquired title to the mineral rights in certain lands. Subsequently, title to the lands became vested in the plaintiff. Two of the intervening deeds contained the following stipulation, viz.: "It is further stipulated that all mineral rights are expressly reserved, having heretofore been sold by the present vendor to the Louisiana Coal & Lumber Company, Limited, subject to the stipulations contained in such sale of mineral rights to said company." And the court, without any elaborate discussion, held that the stipulation contained an acknowledgment which was sufficient to interrupt the running of prescription against the mineral rights.

The next case is that of Sellington v. Producers' Oil Company. In that case the stipulation relied on as interrupting the running of prescription was couched in the following language, viz.: "The vendor herein specially reserves and excepts from this sale all the oil, gas and other minerals in and under said land, with the right of ingress and egress in order to mine and produce the same; the oil, gas and other minerals under said land, with the right to enter upon said land at any time for the purpose of removing the same, having been heretofore sold by J. M. Sellington to the Producers' Oil Company, as shown by act of sale recorded in the recorder's office, Caddo parish, La."

After the Producers' Oil Company had acquired from Sellington the mineral rights on certain lands owned by him, Mrs. Sel-

lington, the then owner, sold a portion of the lands thus encumbered to John Murray and his wife. It was in the deed from Mrs. Sellington to the Murrays that the language hereinabove quoted appeared. But that land was not involved in the suit. It was only on the remainder of the land that Mrs. Sellington sought to enforce her prescriptive rights. The language of the opinion shows that, while the stipulation contained in the deed from Mrs. Sellington to the Murrays might be sufficient to interrupt the running of prescription as to the land therein described, it was not sufficient to interrupt the running of the prescription as to other lands, although all the lands had been included in the sale of the mineral rights to the Producers' Oil Company. The court was careful to point out in its opinion that the acknowledgment made by Mrs. Sellington in the sale to the Murrays that the minerals or mineral rights in that part of the land had been sold to the Producers' Oil Company was nothing more than a statement of fact, with regard to the land plaintiff was selling to John Murray and wife. "It did not purport to be—and was not—a waiver or an interruption of the prescription that was accruing against the mineral rights which the Producers' Oil Company had acquired in the land that plaintiff retained."

The Frost-Johnson and Sellington Cases were followed by the case of Lewis v. Bodcaw Lumber Company. The organ of the court was the same in each of the cases. In the Lewis v. Bodcaw Lumber Co. Case,

the author of the opinion commented rather freely upon the other two cases. In regard to the Frost-Johnson Case, he had this to say: "The district judge in this case cites the case of Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co., 149 La. 100, 88 So. 723, in support of his ruling that the prescription of 10 years was interrupted by the acknowledgment made by the plaintiff in his deed from Walton H. Lewis. The acknowledgment which was held to have interrupted prescription in the case of Frost-Johnson Lumber Company v. Nabors Oil & Gas Co., was something more than a mere acknowledgment that the land was sold subject to the reservation already made of the mineral righs, for it was itself a reservation of the mineral rights from the new sale. The new reservation was made thus: 'It is further stipulated that all mineral rights are expressly reserved, having heretofore been sold by the present vendor to the Louisiana Coal & Lumber Company, Limited, subject to the stipulations contained in such sale of mineral rights to said company.'"

With reference to the Sellington Case, the author of the opinion in the Lewis Case had this to say, viz.: "We held that the mere acknowledgment by the plaintiff that her husband had sold to the defendant the mineral rights on that part of the land which she was then selling to John Murray and wife did not interrupt the prescription which was then accruing against the defendant's mineral rights on the remaining part of the land. In the course of

the opinion rendered in the case, it was said that, inasmuch as the mineral rights were actually reserved from the sale to John Murray and wife, the prescription was interrupted as to the land which they bought."

The Lewis v. Bodcaw Lumber Co. Case was reaffirmed in the case of La-Del Oil Properties, Inc., v. Magnolia Petroleum Co., 169 La. 1137, 126 So. 684, 685, 686, wherein this court, in passing upon article 3520 of the Civil Code, used the following language: "In construing this article, the Supreme Court of this state has held repeatedly that 'the acknowledgment, in order to interrupt prescription, must be specific;' that 'unless the acknowledgment be clear and precise, courts cannot consider it;' and that 'a simple recognition neither disposes of nor changes the state of the thing,' as said by Dumoulin." Further on in the opinion the court declared: "The Bodcaw Lumber Co. Case is sound in principle, is the latest expression of the court on the subject, and is supported by numerous decisions of this court, as well as by the French jurisprudence. * * * We therefore expressly reaffirm in this case the doctrine announced by this court in the Bodcaw Lumber Co. Case."

The stipulation relied on as interrupting prescription in the Bodcaw Lumber Company Case was: "Together with all improvements thereon, and all rights thereto belonging, except that this sale is made subject to the mineral reservation made by the Bodcaw Lumber Company of Louisiana

when they deeded the land herein to this vendor, as per deed recorded in Vol. 29, page 142." And in the La-Del Properties v. Magnolia Petroleum Company Case the stipulation was: " * * * Except such portions as have already been sold by L. M. Fairbanks at private sale, and reserved in the deed to L. M. Fairbanks from Central Immigration, Real Estate and Land Company, Ltd."

A comparison of the stipulations shows that they are substantially the same. They clearly set forth that the mineral rights on the lands described are excepted from the sales and are outstanding in third parties by virtue of the instruments mentioned. But they differ from the stipulations which were under review in the Frost-Johnson and Sellington Cases, in that they do not contain any specific mineral reservation.

In Arent v. Hunter, 171 La. 1059, 133 So. 157, the owner of a tract of land sold the surface rights, expressly reserving the mineral rights. Subsequently, the purchasers of the surface rights conveyed them to another party, who, in turn, sold them to the plaintiff Arent. It was stipulated in the deeds that the sales were made exclusive of the mineral rights, which were expressly reserved therefrom. And the court said that the language contained in the deeds was not sufficient to constitute such an acknowledgment as would interrupt the running of prescription.

As we have seen, therefore, each of the above-mentioned cases announces the principle that a specific acknowledgment of a prior reservation of mineral rights is not of itself sufficient to interrupt the running of prescription; that something more is required for that purpose than the mere acknowledgment of the existence of such rights in a third person. As pointed out in the Lewis Case, there must be coupled with the acknowledgment the purpose and intention of the party making the acknowledgment to interrupt the prescription then accruing. And, as pointed out in the Sellington Case, the acknowledgment, no matter how specific, must be limited in its legal effect to the lands actually conveyed, and cannot by implication be extended to lands which, though described or referred to, are not embraced in the conveyance.

We do not find anything in the case of White v. Ouachita Natural Gas Company which indicates that the court has departed from the principle announced in the prior cases. In that case the owner of the land had expressly acknowledged the lease in writing and had been accepting the benefits flowing therefrom. And the court held that those acts were sufficient to interrupt the running of prescription.

On reviewing the evidence offered on the trial of the case, we find that the various documents on which defendant relies for the interruption of the prescription pleaded by the plaintiff do not describe any of the lands involved in this case. All the documents, with a few exceptions, refer only to lands situated in the parishes of Ouachita and Union. It is true that in many of the documents there is some ref-

erence to the original and operating contracts and some general language as to their ratification, but the documents themselves are clearly intended by the parties to operate only on lands in the two parishes above mentioned. They have no effect on lands situated in the parishes of De Soto and Sabine, which are subject to entirely different and distinct servitudes. Hence they are not sufficient to interrupt the running of prescription.

The defendant contends that plaintiff further recognized its mineral rights in a letter dated March 12, 1930, addressed to a brokerage firm of Boston, Mass. The letter, which was signed by Mr. E. A. Frost, the president of the plaintiff company, contains the following statement, viz.: "That company (referring to the Union Power Company) owns the gas rights on practically all the lands belonging to the Frost Lumber Industries, Inc., and its capital stock is owned in equal amounts by this company and another interest."

Pretermitting the question as to whether Mr. Frost could bind his corporation without specific authority to do so, we find nothing in the language quoted that evidences any intention on his part to interrupt the running of prescription against the mineral rights involved in this suit. No mention is made in the letter of any particular lands. The information therein contained is neither precise nor specific. It neither disposes of nor changes the existing state of things.

The mineral leases on which defendant relies as showing the course of dealings between plaintiff and defendant affect only lands covered thereby. None of the lands in dispute here are mentioned in the leases, and no reference is therein made to any document which affects defendant or the mineral rights claimed by defendant. The so-called Gibson and Johnson lease, which included land in De Soto parish not involved in this suit, never became effective. Moreover, in signing the proposed lease, the parties expressly agreed that it was to be restricted to the lands therein described, and that, as to other lands, the Frost Lumber Industries, Inc., in no wise renounced or waived its rights.

Defendant refers in its brief to four lawsuits in which it contends that plaintiff judicially admitted and recognized its title to the mineral rights which it is herein claiming. Three of the suits were filed in the Third judicial district court for the parish of Union and one was filed in the United States District Court for the Western District of Louisiana. A total of 356½ acres of land was involved in the four suits; all the land being situated in the parish of Union. All the pleadings in the suits on behalf of plaintiff were signed by its attorneys. The attorneys were retained by plaintiff to protect its interests in the lands involved in the litigation. Their authority could not exceed the limits of their employment. No act on their part could interrupt the running of prescription on lands situated in the parishes of Sabine and

De Soto, which were not in dispute. Manifestly, such an act would not be binding on plaintiff or have any legal effect whatsoever.

■ Our conclusion is that the judgment appealed from is correct. There has been no acknowledgment on plaintiff's part sufficient to interrupt the prescription running against defendant's mineral rights on the lands described in the petition, and, more than ten years having elapsed without development, those rights have become prescribed by nonuse.

For the reasons assigned, the judgment appealed from is affirmed.