178 So. 359

### KENNEDY v. PELICAN WELL TOOL & SUPPLY CO.

### VAUGHAN v. SAME.

No. 34520.

Jan. 10, 1938.

Cook, Cook & Egan, of Shreveport, for appellant.

Barksdale, Warren & Barksdale, of Ruston, for appellees.

LAND, Justice.

Mrs. Effie McClendon Kennedy and her two sisters, Mrs. Roberta McClendon Vaughan and Mrs. Isophene McClendon Rudasill, and their mother, Mrs. Jane McClendon, being then co-owners of the land, sold to John Woodley, on May 10, 1925,

an undivided one-fourth interest in the oil, gas, and other minerals in and under certain land situated in the parish of Claiborne, including the following tracts, to wit: N.E.¼ of N.E.¼; S.W.¼ of N.E.¼; S.W.¼ of S.E.¼ of section 26, township 21 north, range 5 west, which were acquired, in separate ownership, by Mrs. Effie McClendon Kennedy December 20, 1929, in a partition with her sisters, after the death of their mother, of whom they were sole heirs.

The undivided one-fourth interest sold to John Woodley in the minerals, on May 10, 1925, by these co-owners, also included the following tract, to wit: S.E.¼ of S.W.¼ of section 25, township 21, range 5 west, Claiborne parish, which was also acquired individually by Mrs. Roberta McClendon Vaughan in the same partition with her sisters, after the death of their mother.

On June 28, 1930, after this partition, John Woodley conveyed his undivided one-fourth mineral interest or right to Pelican Well Tool & Supply Company, defendant herein.

On May 26, 1937, Mrs. Effie McClendon Kennedy and Mrs. Roberta McClendon Vaughan brought separate suits in the Second district court, parish of Claiborne, to have decreed that the mineral right conveyed by the co-owners to John Woodley on May 10, 1925, was prescribed, lost, and extinguished by nonuser on May 10, 1935, in so far as the lands received by them in partition are concerned, and to enjoin defendant company from asserting any right or claim thereunder.

These two suits were consolidated for trial in the district court, and are consolidated in this court. Separate judgments were rendered against defendant company in the lower court in each case, in favor of each plaintiff, as prayed for, and from these judgments defendant company has appealed.

In each case, defendant company has filed similar answers to the petitions, which are also similar.

1. Defendant company admits in its answers that the mineral right acquired by it from John Woodley June 28, 1930, has never been exercised, but denies that such right has prescribed by nonuser during ten years.

Assuming the position of plaintiff in reconvention, defendant company relies for the interruption of prescription upon an oil, gas, and mineral lease executed by defendant company to O. G. Collins, June 22, 1932, for a term of ten years from its date, and assigned by him to the United Gas Public Service Company. Defendant company contends that under the terms of this lease the same could be kept in force by the lessee, or his assigns, upon the payment to the lessors by deposit in the Homer National Bank, of Homer, La., of 50 cents per acre annually, or a total of $100 upon the entire 200 acres leased.

Defendant company alleges that such payments have been made regularly by the United Gas Public Service Company, by deposits in bank, up to June 22, 1937, and that the lease is still valid and outstanding against the property.

Defendant company alleges that plaintiffs, Mrs. Effie McClendon Kennedy and Mrs. Roberta McClendon Vaughan, joined that company in the lease executed by plaintiffs to O. G. Collins June 22, 1932, which, it is contended, interrupted the prescription.

▆ The fact, however, is that neither of these plaintiffs joined with the defendant company in the execution of these leases. The instruments themselves, *as well as the admission of defendant company that its name was inserted in the leases after their execution by plaintiffs, and out of their presence,* show this fact. See Leases T. 24; T. 36.

When plaintiffs executed the leases relied upon, they had no knowledge that defendant company, or any other mineral owner, would later be asked or permitted to sign the same. See Testimony of Mrs. Vaughan and of Mrs. Kennedy, T. 110.

However, it is contended by defendant company that plaintiffs, through their agent, Dr. Vaughan, knew that defendant company would affix its signature later. The testimony of O. G. Collins, the lessee, on cross-examination, shows, to the contrary, that Dr. Vaughan had no such knowledge:

"Q. And when you were discussing the matter with Dr. Vaughan you didn't know who owned outstanding mineral if any?

"A. I knew it was but I did not know who it was.

"Q. You didn't know if there was one outstanding?

"A. Not at that time.

"Q. Did you tell Dr. Vaughan that it was necessary for outstanding mineral rights to sign the same lease as the land owner? Did you think you were telling him the truth when you told him that?

"A. I won't say that I was telling the truth. That was one of the methods.

"Q. Don't you know there are thousands of instances where the outstanding owners of mineral rights does sign an entirely different lease?

"A. Yes, I have done it both ways.

"Q. Did you explain to Dr. Vaughan that if you did get the owner of the outstanding mineral rights to sign the same lease or leases that the land owners signed that the effect would be to interrupt the running of prescription against those mineral rights?

"A. No sir." Tr. 105, 106.

▆ Conceding that, under the authority of Mulhern v. Hayne, 171 La. 1003, 132 So. 659, the signing of a *joint lease* by the landowner and by the owner of an interest in the minerals has the effect of interrupting the running of prescription against the mineral rights, such a doctrine cannot be applied, under the particular facts of the case at bar, where neither of the plaintiffs, the landowners, who executed the lease relied upon, nor their agent, Dr. Vaughan, had any knowledge that defendant company would later be asked or permitted to sign the same lease.

In the Mulhern Case it was the intention of the parties to sign *a joint lease,* which was signed by all of the parties at the time of the confection of the lease.

In the case at bar, it was not the intention of plaintiffs to sign *a joint lease, but separate leases,* which the plaintiffs did actually sign. In so doing, it is manifest that plaintiffs had no specific intent to interrupt the prescription of ten years then running against the owner of an interest in the minerals, the defendant company.

Besides, no authority, written or otherwise, is shown to have been granted to Dr. Vaughan, agent of plaintiffs, to acknowledge any mineral right for the purpose of interrupting prescription.

■ 2. The argument of able counsel for defendant company that the acceptance of a part of the rentals by plaintiffs constituted sufficient acknowledgment to interrupt the running of prescription would make it impossible to prescribe for mineral rights, and, at the same time, obtain the benefits of the lease.

In our opinion, the acceptance by plaintiffs of a part of the rentals in this case was a mere acknowledgment of the existence of the rights of those in whose favor the servitude ran, and was not an acknowledgment accompanied by or coupled with the purpose and intention of plaintiffs to interrupt the prescription then running. Bremer v. North Central Texas Oil Co., 185 La. 917, 171 So. 75.

In Frost Lumber Industries v. Union Power Co., 182 La. 439, 162 So. 37, numer-

ous cases are cited as to the proper construction to be placed upon article 3520 of the Civil Code, which reads as follows:

"Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed."

Among the authorities cited in the Frost Lumber Industries Case, supra, is the case of La Del Oil Properties v. Magnolia Petroleum Co., 169 La. 1137, 126 So. 684, 685, 686, in which, in passing upon article 3520 of the Civil Code, the following language is used:

"In construing this article, the Supreme Court of this state has held repeatedly that 'the acknowledgment, in order to interrupt prescription, *must be specific;*' that 'unless the acknowledgment be clear and precise, courts cannot consider it;' and that 'a simple recognition neither disposes of nor changes the state of the thing,' as said by Dumoulin." (Italics ours.)

3. The method resorted to in this case by defendant company to prevent the running of prescription does not receive approval at the hands of this court, nor can defendant company be heard to plead, under the circumstances of the case, that the acceptance of part of the rentals by plaintiffs ratified the so-called joint lease.

The judgments appealed from are affirmed.