1 So.2d 530

**ACHEE et al. v. CAILLOUET et al.**
**No. 35944.**

Jan. 6, 1941.

On Rehearing March 31, 1941.

Brumby & Bauer, of Franklin, for plaintiffs and appellees.

William H. Talbot, of New Orleans, and Rene H. Himel, of Franklin, for defendants and appellants.

ROGERS, Justice.

On March 7, 1917, Paul LeBlanc purchased from Albert Caillouet a tract of land situated on the east side of Bayou Teche, opposite the Village of Charenton, in the Parish of St. Mary. In the act of sale, Caillouet, the vendor, reserved an undivided one-half of the minerals in, upon or below the surface of the property sold. On January 27, 1921, Paul LeBlanc sold to Aristile Achee the property which he had purchased from Albert Caillouet. In the act of sale no mention was made of the reservation of mineral rights by Caillouet, nor did LeBlanc himself reserve any mineral rights.

On March 28, 1924, a mineral lease, in which the names of Aristile Achee and Albert Caillouet appear as lessors, was executed covering the property. The lease was in favor of Paul N. Cyr and was for a primary term of five years. On March 17, 1924, and again on May 14, 1925, the lease was amended, the instruments evidencing the amendments bearing the signatures of the lessors.

The wife of Aristile Achee died on July 25, 1930, and her estate, consisting of an undivided one-half interest in the property, was inherited by her six children.

Albert Caillouet died on September 28, 1932, leaving as his survivors a widow and seven children, three of whom were minors.

On February 17, 1932, Aristile Achee and his six children granted a mineral lease covering the property to C. H. Green and George T. Veeder. Under various assignments of this lease, the first mineral development and production occurred during the month of August, 1939. Prior to this, namely, on May 4, 1939, the widow and heirs of Albert Caillouet granted a mineral lease covering the property to the St. Mary Oil Company, Inc.

On November 22, 1939, Aristile Achee and his six children instituted this suit against the widow and seven children of Albert Caillouet and the St. Mary Oil Company, Inc., praying to be recognized as the owners of the minerals and mineral rights in and under the property acquired by Aristile Achee from Paul LeBlanc, and that the mineral lease granted by the widow and heirs of Albert Caillouet to the St. Mary Oil Company, Inc., be cancelled and erased from the records. The plaintiffs alleged that the mineral servitude reserved by Albert Caillouet was extinguished by the prescription of ten years liberandi causa. In the alternative, plain-

tiffs alleged that they had acquired title to the property, including all the minerals thereunder, by the prescription of ten years acquirendi causa.

Defendants filed an answer in the nature of a general denial, but as the case developed during the trial, they apparently relied upon their claim that the prescription pleaded by plaintiffs had been interrupted by the execution of the lease, bearing date March 28, 1924, in favor of Paul N. Cyr.

After the case had been submitted, but before judgment, Aristile Achee died. The succession was opened and his heirs were sent into possession of his estate. By proper motion, they were made parties plaintiff so far as the rights of their deceased father were concerned.

The trial judge rendered judgment for plaintiffs, decreeing them to be the owners of the minerals and mineral rights in, to and under the property described in the petition; decreeing that the mineral reservation made by Albert Caillouet in the act of sale to Paul LeBlanc on March 7, 1917, was prescribed, lost and extinguished for nonuser for a period of more than ten years; and decreeing that the mineral lease granted by the defendants, the widow and heirs of Albert Caillouet, in favor of their co-defendant, St. Mary Oil Company, Inc., be cancelled and the inscription thereof be erased from the conveyance records of the Parish of St. Mary. The defendants are appealing from the judgment.

Since the decision of this Court in Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207, it has been the settled jurisprudence of this State that a mineral reservation is in the nature of a servitude and is prescribed by nonuser for ten years.

It is not disputed that there was no mineral development or attempted mineral development on plaintiffs' land prior to the month of August, 1939, when mineral production was had under the lease granted to C. H. Green and George T. Veeder. Therefore, the mineral servitude reserved by Albert Caillouet on March 7, 1917, expired by limitation on March 7, 1927, unless plaintiffs have in some lawful manner interrupted, suspended, or extended the running of the ten-years prescription liberandi causa. This is the primary question presented for decision in the case.

Defendants contend that the mineral lease signed by Aristile Achee and Albert Caillouet on March 28, 1924, for a primary term of five years was a joint lease and that as such it constituted an acknowledgment of defendants' rights, thereby interrupting the prescription running in favor of Aristile Achee. In support of their contention, defendants rely upon the case of Mulhern v. Hayne, 171 La. 1003, 132 So. 659.

On the trial in the district court, defendants rested their case on the lease itself, objecting to the admission of parol evidence in connection with the lease. Their objection was referred to the merits. The evidence offered by plaintiffs was admitted subject to the objection.

The undisputed testimony in the record shows that at the time the mineral lease

and its amendments were signed, Aristile Achee lived in St. Mary Parish and Albert Caillouet lived in Jefferson Parish. There was no consultation, understanding or agreement between Achee and Caillouet, neither knowing the other, relative to the lease or its amendments. The instruments were signed by the parties at different times and places, out of the presence of each other. They were not read to Achee, who was unable to read, being barely able to sign his name. Caillouet's name was not mentioned at any time, nor was it stated that any person other than Achee would be asked or permitted to sign the instruments. Achee did not know or contemplate that Caillouet was expected to sign the lease or would be asked to sign the lease. He did not learn that Caillouet had signed the lease until the year 1939 when he called on Mr. Himel, an attorney of Franklin, Louisiana, who owned a royalty interest, with reference to the development of the property because of production on the adjoining tracts.

In Bremer v. North Central Texas Oil Co., 185 La. 917, 171 So. 75, this Court held that in order to interrupt the running of the ten years prescription of a mineral servitude for nonuser, there must be more than a bare acknowledgment. The acknowledgment must be accompanied by the intention of the parties making it to interrupt the prescription then running. Under this ruling this Court has sanctioned the admission of parol evidence to ascertain the intention of a landowner appearing in a mineral lease as a co-lessor with the mineral owner. Kennedy v. Pelican Well Tool & Supply Co., 188 La. 811, 178 So. 359; English v. Blackman, 189 La. 255, 179 So. 306; Hightower v. Maritzky, 194 La. 998, 195 So. 518, 521.

In the Kennedy case, this Court declared what constitutes a joint lease for the purpose of acknowledgment. In that case, the plaintiff-landowners executed a lease and the defendant's name was inserted in the instrument after its execution by plaintiffs and out of their presence. Plaintiffs had no knowledge that the mineral owner would later be asked or permitted to sign the lease.

The case of English v. Blackman involved the execution of a lease by the landowner and the royalty owners, the term of the lease extending beyond the date on which the servitude previously granted expired. The defendants, royalty owners, contended that such a lease was an acknowledgment not only of the existence of their rights but also constituted an agreement that they would have further time within which to exercise their rights. In the Bremer, Kennedy and English cases, the Mulhern case was discussed and distinguished.

The Hightower case represents the latest expression of this Court on the question under discussion. The facts in that case are similar to the facts in this case, and one of the questions of law involved in both cases is the same. There, as here, the Mulhern case was relied upon by the mineral owner. This Court, in commenting upon the Mulhern case, declared: "That decision was not based upon the idea that the landowner, by joining in the lease

with the holder of the mineral rights as a co-lessor, acknowledged the rights of the co-lessor and thereby interrupted the prescription." The Court then explained that the controlling feature in all such cases is the intention of the parties that they should be co-lessors, and thereby to suspend or extend the remaining part of the ten-year period of prescription. The Court found that neither of the leases was signed by the parties at the same time, and though the names of the co-lessors appeared in the written instruments, it being established that the landowner at the time he signed the instrument did not know or anticipate that the royalty owner would also sign it, re-affirmed the ruling announced in the Kennedy and English cases, namely, that parol evidence was admissible to show the intention of the landowner in executing a mineral lease as co-lessor with the mineral owner to recognize the latter's rights and interrupt the running of prescription. Because the evidence in the case failed to establish the intention of the landowner to do this, the Court rejected defendants' plea that the running of the prescription was interrupted by the execution of the instruments relied on for that purpose.

As we have stated, the only evidence offered by defendants in this case in support of their contention is the contract of lease itself. But there is nothing in that contract to show, or even to indicate, that Aristile Achee intended to interrupt the running of prescription in his favor. Under the facts disclosed, Achee by signing the lease did not intend to interrupt the running of the prescription which he has pleaded in this case. Since neither the mineral lease nor its amendments under review here were jointly executed, the Mulhern case and the other cases, including Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583, cited by defendants, are not appropriate.

The fact that Albert Caillouet left three minor children at the time of his death did not have the effect of suspending the running of prescription in favor of Aristile Achee. Caillouet died on September 28, 1932, and since the mineral servitude created in his favor had expired by limitation some time prior to his death, the minority of his children can not affect the conclusion we have reached in this case.

The plea of estoppel filed by defendants after the submission of the case in the district court did not raise any new issue in the case. The plea merely reiterated defendants' contention that parol evidence was inadmissible to show that the mineral lease was not a joint lease.

It is not necessary for the Court to consider plaintiffs' alternative plea that they acquired title to the property, including the minerals, by the prescription of ten-years acquirendi causa.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., does not take part.

FOURNET, J., concurs in the result.

## On Rehearing.

ODOM, Justice.

. In our original opinion we stated the pertinent facts connected with this case. We shall not restate them here further than to say that, when Aristile Achee purchased the tract of land from LeBlanc, nothing was said about the servitude then owned by Albert Caillouet, ancestor of defendants. Caillouet was a former owner of the land. On March 7, 1917, he sold it to Paul Le-Blanc, and in the act of sale it was stipulated that the vendor reserved an undivided one-half of the minerals in, upon, and below the surface of the property sold.

It is conceded that a mineral reservation of this kind is, under the settled jurisprudence of this state, in the nature of a servitude on the land and that such servitudes prescribe, or expire by limitation, in 10 years if not used. It is conceded also that neither Albert Caillouet nor anyone else made use of this servitude at any time during the 10-year period immediately following the date of its creation on March 7, 1917.

Plaintiffs' suit to cancel the servitude was grounded upon the proposition or theory that, because it was not used, the servitude prescribed, or expired by limitation, on March 7, 1927—the end of the 10-year period immediately following the date of its creation on March 7, 1917.

Defendants concede that the hypothesis on which plaintiffs base their suit is well founded in law. But they set up and rely on the defense that the servitude did not prescribe or cease to have legal existence

on March 7, 1927, as alleged and contended by plaintiffs, because the running of prescription in favor of the plaintiff landowner was interrupted on March 28, 1924, when he and Albert Caillouet, the owner of the servitude, signed a mineral lease on the land in favor of Paul N. Cyr. The primary term of that lease was five years, the five-year period extending two years and 21 days beyond the end of the prescriptive period applicable to the servitude.

Counsel for defendants argue (1) that the lease dated March 28, 1924, signed by Achee, the landowner, and Caillouet, the owner of the servitude, shows on its face that it was a joint lease, the effect of which was to interrupt the 10-year prescription then running in favor of the landowner, and (2) that, because of the interruption thus brought about, Caillouet's servitude was created anew, was born again as of that date, and lived on for a period of 10 years from the date of the interruption; so that the end of the prescriptive period applicable to that servitude was not March 7, 1927, but March 28, 1934, or 10 years from the date on which the alleged interruption took place.

In their application for rehearing, counsel for defendants say that our original opinion and decree are erroneous because we erred (1) in failing to follow the ruling in Mulhern v. Hayne, 171 La. 1003, 132 So. 659; (2) in considering the parol testimony offered by plaintiff tending to show that the mineral lease dated March 28, 1924, was not in the true sense a joint lease, and (3) in holding that the case of Bremer v. North Central Texas Oil Co.,

185 La. 917, 171 So. 75, supports the proposition that, in order to interrupt the running of the 10-year prescription applicable to mineral servitudes for non-user, there must be more than a bare acknowledgment of the rights of the owner of the servitude.

The facts relating to the execution of the mineral lease dated March 28, 1924, in favor of Paul N. Cyr, are stated in our original opinion. We held that, under the facts disclosed, it was not a joint lease. For the purpose of this opinion, we pretermit further discussion of that controverted point and assume, as counsel argue, that it was a joint lease and that Achee, the landowner, knew when he signed it that Caillouet then owned a mineral servitude on his land.

The question, then, is whether the execution of that lease had the effect of interrupting the running of the 10-year prescription applicable to the mineral servitude so as to keep the servitude in legal existence for 10 years from the date of the lease.

In order to show the interruption, counsel for defendants offered no evidence except the lease contract, which they filed. They argue that this court has definitely held that, when a landowner joins the owner of the servitude in a mineral lease, he thereby recognizes all of the rights of his co-lessor, and that such acknowledgment interrupts prescription, and that the effect of such interruption is to give the servitude new life for a period of 10 years dating from the day of acknowledgment.

In the case of Mulhern v. Hayne, supra, which is relied upon by counsel for de-

fendants, there are expressions in the opinion which support their argument that the act of joining the owner of the servitude in a mineral lease is such an acknowledgment by the landowner of the rights of his co-lessor as to cause the 10-year prescription to run anew from the date of the acknowledgment. But those expressions are obiter dicta, because the court was not called upon to decide that point. The point was not raised, and, therefore, in so far as that case holds, or seems to hold, that this bare acknowledgment is such an interruption as to cause the prescription applicable to mineral servitudes to run anew from the date of acknowledgment, to that extent and in that respect the opinion goes beyond the issues raised and is not authority.

The facts in the Mulhern case were that on February 21, 1919, Mulhern, the plaintiff, purchased from Frank B. Hayne, Hugh E. Vincent, and Mrs. Nannie C. Vincent a certain tract of land, the vendors reserving to themselves a one-half interest in the minerals. In that case, as in this one, the servitude was not exercised, but on July 15, 1926, approximately seven years and five months after the date of its creation, and when the servitude had but two years and seven months to run, Mulhern, the landowner, joined the owners of the servitude in the execution of an oil and gas lease affecting the entire property, the primary term of the lease being five years. After the 10-year prescriptive period had expired, Mulhern, the landowner, brought suit to cancel the servitude on the ground that it had prescribed because of non-use during the prescriptive period, his con-

tention being that the reserved rights had ceased to exist. He prayed for judgment "recognizing him as the sole owner, and entitled to the possession of all minerals, oil, and gas in and under the land described supra; ordering the recordation of said reserved rights expunged from the public record".

Defendants excepted to the petition on the ground that it did not disclose a cause or right of action. The exception was sustained by the trial court, plaintiff's suit was dismissed at his cost, and he appealed from the judgment. The judgment was affirmed by this court.

Clearly, the only question which the court had before it for decision in that case was whether Mulhern, the landowner, was entitled to judgment recognizing him to be the owner and entitled to possession of all the minerals in and under the land as of the date on which the suit was filed, and ordering the cancellation from the records of all evidence of the mineral servitude.

The court decided the issue raised by Mulhern adversely to his contentions. Under the facts disclosed by the record, the conclusion reached by the court was clearly correct. Two years and seven months before the expiration of the 10-year prescriptive period, Mulhern, the landowner, joined the owners of the servitude in the execution of a mineral lease covering the entire property, which lease, according to its terms, ran for a period of five years and to a date beyond the expiration of the 10-year prescriptive period. Despite this fact, and ignoring entirely the lease contract into which he had entered with the defendants in favor of the lessee, Mulhern sued to cancel the servitude, alleging that it had expired because of non-usage at the end of the prescriptive period.

The effect of a ruling in Mulhern's favor on the issue which he raised would have been to strike down the lease contract and utterly destroy the rights of his lessee. At the time the lease contract was made, the servitude had less than five years to run. But Mulhern agreed that the lease should run for five years. Mulhern owned only a one-half interest in the mineral rights, the other one-half interest being owned by the defendants. By joining the owners of the servitude in making the lease, Mulhern recognized and acknowledged their rights —made himself a party with them to a contract affecting the entire interest in the minerals for a period of time extending beyond the expiration of the 10-year prescriptive period applicable to mineral servitudes. That, in effect at least, was a representation to the lessee that it could with safety deal with his co-lessors regarding the interest in the minerals which he did not own. Mulhern could not say in one breath that his co-lessors had the right to join him in making a lease contract affecting the mineral rights in his land extending beyond the end of the 10-year prescriptive period, and in the next breath say that they had no such right. The court correctly held that Mulhern had no case.

Hayne and the two Vincents did not plead that the life of the servitude was extended for a period of 10 years from the

date of the lease. All they did was to meet the issue raised by the plaintiff, and, deciding that issue, the court said [171 La. 1003, 132 So. 660]:

"Here the plaintiff, as the owner of one half of the minerals, joined the persons in whose favor the other half of said mineral rights had been reserved, in the execution of a lease, of all the oil and gas, to a third person, for a term of years extending beyond the prescriptive period, and to an indefinite future period, beyond that time, in the event oil or gas is produced from the leased land. By joining in this lease plaintiff thereby recognized all of the rights of his colessors, and he cannot escape the effect of his written acknowledgment, which, in our opinion, we must hold to be a interruption of the then accruing prescription."

Therein is found the ruling of the court on the one and only issue presented, which clearly was whether or not, at the time Mulhern filed his suit, the mineral servitude had prescribed.

It was definitely held that it had not, because Mulhern, by joining the owners of the servitude in a mineral lease affecting "all the oil and gas" for a term of years extending beyond the prescriptive period, had thereby acknowledged and recognized their rights, which acknowledgment indicated his intention to interrupt the running of prescription so as to make the lease effective.

The Mulhern case was decided in February, 1931. Since that time, several cases

have been decided in which the Mulhern case was cited with approval. In Bremer v. North Central Texas Oil Co., 185 La. 917, 171 So. 75, we said that the Mulhern case was decided right. What we meant was that the issue presented in that case was correctly decided. Counsel for defendants argue that, because the Mulhern case has not been overruled but on the contrary has been reaffirmed, this court is now definitely committed to the proposition that, when a landowner joins the owner of a servitude in the execution of a mineral lease like the one in the Mulhern case and the one in this case, he thereby makes such an acknowledgment of the rights of his co-lessor as to cause the prescription applicable to the mineral servitude to run anew from the date of the acknowledgment.

The error into which counsel have fallen arises (1) out of their mistake in believing that the Mulhern case is authority for that proposition, (2) in failing to observe that, in the Bremer case and others, we explained the theory on which the ruling in the Mulhern case was based, and (3) in overlooking the fact that it was held in at least five cases decided since the Mulhern case that an acknowledgment of the rights of the owner of the servitude does not interrupt the running of prescription so as to make it run anew unless the acknowledgment is made with the purpose and intention that it shall have that effect, and that such purpose and intention must clearly appear.

In the Bremer case, explaining the theory on which the ruling in the Mulhern case was based, we said that Mulhern's joining the owners of the servitude in the execution of the oil and gas lease not only evidenced his intention of acknowledging their rights, but evidenced also his "consent that they have further time within which to exercise those rights". We said:

"Manifestly the life of the servitude had to be extended to make the five-year lease valid for that length of time." [185 La. 917, 171 So. 77.]

In other words, Mulhern, in order to make the five-year lease effective, had to agree that the course or running of prescription against his co-lessors' servitude be broken into or hindered and the life of it extended, because otherwise it would have expired prior to the end of the primary term of the lease.

As defined by Webster's New International Dictionary, the word "interrupt" means "To break into, or between; to stop or hinder by breaking in; to interfere with the course, current, or motion of". The word "interruption" means "Act of interrupting, or breaking in upon; state by being interrupted. * * * A breach or break, caused by the abrupt intervention of something foreign".

In those cases in which we said that the effect of the landowner's joining the owners of the servitude in making a mineral lease was to "interrupt" the running of prescription, we meant that the prescription was interrupted in the sense that it

was broken into, hindered, or stopped, as defined in the dictionary, and not in the sense that the word is used in the Civil Code relating to the acknowledgment of a debt.

In Hightower et al v. Maritzky, et al., 194 La. 998, 195 So. 518, 521, we said that it was explained in the Bremer case " * * * that the decision in the Mulhern case was based upon the proposition that it was impossible for the landowner and the holder of the mineral rights to make a joint mineral lease of the land for a term extending beyond the expiration of the period of prescription without intending thereby to extend the remaining period of prescription."

A copy of the lease contract signed by Achee, the landowner, and Caillouet, the owner of the servitude, is in the record. It is not stated therein, nor do its terms indicate, that Achee intended that the 10-year prescription applicable to mineral servitudes should run anew from the date of the lease. Neither the servitude nor the manner in which Caillouet acquired an interest in the mineral rights is mentioned, so that there is no evidence that Achee intended that prescription run anew from the date of the lease, and, since there is none, we hold that it did not.

If, as argued by counsel for defendants, the Mulhern case supports the theory which they advance, then the case to that extent and in that respect has been repeatedly overruled by implication. It is utterly inconsistent and irreconcilable with the firmly established rule that a bare ac-

knowledgment by the landowner of the existence of the mineral rights of another in his land does not interrupt the running of prescription in the sense that the prescription begins to run anew from the date of acknowledgment. To have that effect, the acknowledgment must be coupled with the purpose and intention that it shall have that effect, and such purpose and intention must be expressed in unmistakable terms. Frost Lumber Industries v. Union Power Co., 182 La. 439, 162 So. 37, and the cases therein cited; Bremer v. North Central Texas Oil Co., supra; Goldsmith v. Mc-Coy, 190 La. 320, 182 So. 519; Vincent v. Bullock, 192 La. 1, 187 So. 35; Daggett on Mineral Rights in Louisiana, Section 14, pp. 38-52; Hightower v. Maritzky, supra.

To hold that Achee's signing the lease contract evidenced a purpose and intention on his part so to interrupt prescription as to cause it to run anew for a full period of 10 years from the date of the lease would be contrary to reason. It was clearly against his interest to prolong the life of the servitude for that length of time. But it was to his interest to extend the remaining period of prescription so as to make the lease effective.

For the reasons assigned, our original judgment and decree are reinstated and made the final judgment and decree in this case.

O'NIELL, C. J., and LAND, J., absent.

FOURNET, J., concurs in the result.