On Rehearing
FOURNET, Chief Justice.
The pleadings and the issues of this case are so clearly and concisely stated in the original opinion that they will not be restated. As pointed out when the case was originally before us, the Arkansas Louisiana Gas Company, proceeding under the Uniform Declaratory Judgments Act, LSA-R.S. 13:4231-13:4246, is seeking to have •declared valid a certain oil, gas and mineral lease, acquired by it on February 23, 1943, from the landowner, J. M. Gibson (not a party to this suit), and vendees from Gibson or their successors in title •of fractional mineral interests, namely, ■Glen L. Shadow, W. S. Moore, John W. Thurmon, Mrs. Lois Oliver Holstead, James O. Holstead, George B. Holstead, Jr., Mrs. Zoe Heard McGinty and Mrs. S. J. Heard —who are made defendants; and to have declared prescribed, because of nonuse, the claims of the other defendants, Dhu Thompson and his two sons, Lanier and Lea S. Thompson, to all the minerals in and under the land by virtue of a reservation thereof when Dhu Thompson sold the land to Gibson in 191'5.
When the case was originally before us we affirmed the judgment of the lower court overruling the plea of prescription against the mineral interests of the Thompsons, and condemning plaintiff to pay to them $13,344.78, their proportion of the value of production from the well on the unit. In reaching this conclusion we rejected the contention that Gibson had never intended to acknowledge the rights of the Thompsons but only those of his mineral- vendees, in view of the clear wording of the instrument by which the plaintiff, joined by the several lessors, pooled the leases held by it in order» to develop them as a unit. A rehearing was granted primarily for the purpose of reconsidering this issue.
The Thompsons, contending for the cor^ rectness of our previous ruling, pitch their case solely on the provisions of the pooling agreement. They assert that parol evidence is inadmissible for the purpose of negativing the effect of a contract through error ' where there is no- fraud charged; that according to its plain provisions everyone having an interest was to be asked to *887 sign; that Dhu Thompson’s mineral reservation was of record in Lincoln Parish, and Gibson was therefore charged with knowledge that Thompson would be asked to sign. They also claim that, the land having been pooled in an integrated unit, drilling on any part of the pooled area was a use of the Thompson servitude and interrupted prescription; and argue that the plaintiff and the mineral claimants from Gibson are estopped to assert that the pooling agreement does not have the effect therein declared.
The plaintiff and the vendees from Gibson, on the other hand, claim that acknowledgment sufficient to interrupt prescription results only from specific agreement between the landowner and the mineral owner and cannot be implied as between Gibson and the Thompsons in this case, since the Thompsons signed the pooling agreement several weeks after Gibson had signed, out of his presence, without his consent, and even without knowledge on his part that the Thompsons were in any way involved. They make the further argument that even if the pooling contract could be treated as an agreement between Gibson and the Thompsons, it fails as an acknowledgment sufficient to interrupt prescription because of the absence of identity of the parties, description of the property intended to be affected, and mention of the servitude claimed to be acknowledged, —so that, fraud aside, the contract is vitiated by error.
Under the express provisions of the-LSA-Civil Code, there must be at least two parties to every contract, Articles 1765' and 1798; “the next requisite to its validity is their consent”, Article 1797, for “no-contract is complete without the consent of both parties”, Article 1766, since “it is; the common intent of the parties — that is,, the intention of all — that is to be sought for; if there was a difference in this intent, there was no common consent and,, consequently, no contract.” Article 1945.. (Emphasis ours.) A review of the jurisprudence reveals that the Court has consistently applied the test of intent of the-party against whom acknowledgment was-, pleaded in determining whether interruption of prescription has taken place. See Frost Lumber Industries v. Union Power Co., Inc., 182 La. 439, 162 So. 37, containing ’ an exhaustive analysis of prior jurisprudence on the subject; Bremer v. North Central Texas Oil Co., Inc., 185 La. 917, 171 So. 75; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; Spears v. Nesbitt, 197 La. 931, 2 So.2d 650.
In the case of Achee v. Caillouet, 197 La. 313, 1 So.2d 530, it was contended', that a mineral lease, for a primary term, extending beyond the date when prescription would have accrued on a mineral servitude affecting the property, signed by both the landowner and the mineral owner, was a joint lease; and as such it constituted an acknowledgment on the part of the landowner, interrupting the prescrip-
*889 tion running in his favor. As in the case at bar, the defendants (mineral claimants) objected tó the admission of parol evidence in connection with the lease, resting their case on the instrument itself. In disposing of this issue we pointed out that this Court has, on numerous occasions, sanctioned the admission of parol evidence to ascertain the intention of a landowner under such circumstances; and, in concluding that the landowner (Achee), upon signing the lease contract, did not intend to> interrupt prescription, this Court observed that according to the undisputed testimony in the record, “There was no consultation, understanding or agreement between Achee and Caillouet, neither knowing the other, relative to the lease or its amendments. The instruments were signed by the parties at different times and places, out of the presence of each other. * * * Caillouet’s name was not mentioned at any time * * * Achee did not know or contemplate that Caillouet was expected to sign the lease or would be asked to sign * * 197 La. at page 319, 1 So.2d at page 532. On rehearing, after a careful review of our jurisprudence on the subject of interruption by acknowledgment, we reaffirmed our former judgment, stating again the principle that “an acknozvledgment of the rights of the ozvner of the servitude does not interrupt the running of prescription so as to make it run anew unless the acknowledgment is made with the purpose and intention that it shall have that effect, and that such purpose and intention must clearly appear.” 197 La. at page 330, 1 So.2d at page 536. (Emphasis supplied.) We also noted that it would be contrary to reason to impute to the fact of Achee’s signature of the lease, evidence of a purpose and intention on his part to renew the servitude for a full ten year term, since it was clearly against his interest to do so. 197 La. at page 333, 1 So.2d 530.
According to the facts of this case, it is clear that there was no privity of contract between Gibson and the Thompsons. The record shows that during the year 1943 and prior thereto, the plaintiff had acquired oil, gas and mineral leases affecting certain lands, including the ten-year lease from Gibson and his mineral transferees dated February 23, 1943, the validity of which is sought to be upheld in this proceeding. At the time there was no order of the Conservation Commissioner establishing spacing regulations and drilling units for the area, and the plaintiff undertook to form a 640 acre unit for the purpose of drilling and searching for gas by pooling the leases, to the extent that they granted the right to drill for gas, and having the lessors join with it in an agreement to that effect. This instrument, dated November 22, 1943, had apparently been signed by all the lessors, and the titles to the several properties were being examined by the plaintiff’s attorneys when the possibility was discovered that the Thompsons still owned the mineral rights at issue because of Dhu Thompson’s *891 reservation of all' the minerals when he sold the land to Gibson in 1915 — whereupon the plaintiff immediately sought and obtained an oil, gas and mineral lease from Dhu Thompson and his two sons. This lease, procured on December 13, 1943, was for a primary term of two years, one of the conditions, being that the plaintiff would drill a well within one mile of the property leased and within a unit including it before April 1, 1944. Contemporaneously, the Thompsons affixed their signatures to a counterpart of the pooling agreement previously signed by Gibson and his mineral transferees. This instrument failed to identify the parties who would sign other than to name the plaintiff as lessee, and pro.vided that “the undersigned owners of interests in and to” mineral rights would be referred to as “mineral owners.” The evidence conclusively shows not only that the signatures of the Thompsons were affixed out of Gibson’s presence, but without any knowledge thereof or consent on his part. See Kennedy v. Pelican Well Tool & Supply Co., 188 La. 811, 178 So. 359; English v. Blackman, 189 La. 255, 179 So. 306; Hightower v. Maritzky, 194 La. 998, 195 So. 518; and Baker v. Wilder, 204 La. 759, 16 So.2d 346. In the Wilder case, presenting for all intents and purposes a .similar factual situation, where the names of the parties to the agreement were not- written on the lease form but on a separate sheet, attached by paste at the top of the instrument, and there was no testimony to show that it was so attached when any of the parties signed, we observed that “so far as the instrument itself is concerned, there is nothing to indicate that the landowner knew who was to sign it after he signed * * *.” 204 La. at page 771, 16 So.2d at page 350.
Moreover, the body of the pooling agreement on which the' Thompsons base their claim not only failed to identify those designated as “mineral owners” in the property affected by the leases to be pooled, but described the property as a unit — without specific description of the several tracts composing same or in any manner identifying the servitudes bearing on the several tracts. One of the express requirements of the LSA-Civil Code is that the acknowledgment must be of the right of the person whose title the debtor or possessor prescribes. Article 3520. Not only must such acknowledgment be specific, clear and concise, La Del Oil Properties v. Magnolia Petroleum Co., 169 La. 1137, 126 So. 684; Frost Lumber Industries v. Union Power Co., 182 La. 439, 162 So. 37; Kennedy v. Pelican Well Tool & Supply Co., 188 La. 811, 178 So. 359; Daggett on Louisiana Mineral Rights, Revised Ed., pp. 83-85, but the instrument must adequately describe the property to which it applies, James v. Noble, 214 La. 196, 36 So.2d 722, and must sufficiently identify the servitude as to which acknowledgment is sought to be made. Achee v. Caillouet, on Rehearing, 197 La. at page 332, 1 So.2d 530. Although mineral claimants may have in mind extending their *893 mineral rights, they are powerless to do this without the consent of the landowners. White v. Hodges, 201 La. 1, 14, 9 So.2d 433.
It is conceded that the mineral servitude, created by Dhu Thompson through reservation of the minerals in the community property transferred to Gibson in 1915— which would ordinarily have expired because .of non-use in ten years-: — Was continued in effect (due to suspension during the minority of his children who inherited their mother’s rights at her death) to .March 6, 1944; and that there was never any drilling on the property during that period of time; consequently, on that date the servitude was extinguished by prescription resulting from nonusage, LSA-Civil Code, Articles 783, 789, 3546, whereupon the mineral rights reverted to the landowner, see Arent v. Hunter, 171 La. 1059, 133 So. 157, and numerous authorities cited on rehearing at pages 1073, and 161 respectively; Calhoun v. Ardis, 174 La. 420, 141 So. 15; Spears v. Nesbitt, 197 La. 931, 2 So.2d 650, and, under our jurisprudence, immediately became vested in Gibson’s vendees. See Wolf v. Carter, 131 La. 667, 60 So. 52; St. Landry Oil & Gas Co. v. Neal, 166 La. 799, 118 So. 24, and cases cited therein; Jackson v. United Gas Pub. Serv. Co., 196 La. 1, 198 So. 633; and White v. Hodges, 201 La. 1, 9 So.2d 433.
The further contention advanced by the Thompsons that the running of prescription was interrupted by the- drilling of a well on the integrated unit is untenable in Hew of the conclusions reached under the facts of this case and the pertinent jurisprudence.
. The argtiment (not pleaded) that the plaintiff and the mineral claimants from Gibson are estopped to deny the positive averments of the pooling agreement is equally without merit. Estoppels are not favored in law; and, as pointed out by this Court in the case of Harvey v. Richard, 200 La. 97, 7 So.2d 674, “Whenever estoppel is pleaded as an element of a cause of action, it must be pleaded specifically, the burden of proving the facts upon which the estoppel is founded, as well as the affirmative showing that he was misled by the acts and forced to act to his prejudice, resting upon the party invoking the doctrine.” 200 La. at page 103, 7 So.2d at page 677.
If there had been production during the primary term of plaintiff’s mineral lease of December 13, 1943, with the Thompsons from the well drilled on the unitized tract, there might well be merit to the Thompsons’ contention that the plaintiff, with whom they contracted, should be held to the consequences of its action in confecting the agreement to pool the various leases, including the Thompson lease; but the facts are that when gas was finally produced in 1949, the lease with the Thompsons had terminated under its own provisions. However, the Thompsons’ rights would not be founded on estoppel, but would arise under the contract.
*895 For the reasons assigned, the judgment of the district court is reversed and set aside; and it is now ordered, adjudged and decreed that the mineral' reservation or servitude created under the deed from Dhu Thompson to J. M. Gibson dated March 30, 1915, recorded in Conveyance Book BB at Page 266, as corrected by that instrument dated June 9, 1919, recorded in Book JJ at Page 227, of the Records of Lincoln Parish, Louisiana, is. extinguished; and it is further ordered, adjudged and decreed that the oil, gas and mineral lease, dated February 23, 1943, affecting .the East Half of the Southwest Quarter of the Southeast Quarter (Ey£ of SW54 of SE}4)> and the Southeast Quarter of the Southeast Quarter (SE]4 of SE}4) of Section 36, Township 19 North, Range 3 West, and the South Half of the Southwest Quarter (Sy2 of SWi/4) of Section 31, Township 19 North, Range 2 West, Lincoln Parish, Louisiana, executed by J. M. Gibson and his mineral vendees in favor of the plaintiff, recorded in Oil and Gas Book 31 at Page 158, Records of Lincoln Parish, is declared valid and effective. All costs of these proceedings are to- be borne by the defendants Dhu Thompson, Lanier Thompson and Lea S. Thompson.