LE BLANC, Justice
(dissenting on rehearing) .
I am unable to subscribe to the present opinion rendered on this rehearing. I adhere to the views expressed in the original opinion and wish to add these following observations:
The point on which a change has been produced in the judgment is that when Gibson, the landowner, signed the pooling agreement which was subsequently signed by his mineral transferees and also by the Thompsons, he intended only to acknowledge the mineral rights of his transferees and did not intend to acknowledge those of the Thompsons and thereby interrupt the running of prescription against the latter.
It is a fact that Gibson did testify to that effect but certainly that is not what the pooling agreement which he signed, reflects. The agreement contained no reservation as to anyone and on the contrary it specifically stated that it was an agreement between the Arkansas Louisiana Gas ’Company- “and the undersigned owners of interests in and to the oil, gas and other mineral rights on, in and under ’ and that may be produced from the lands herein below described, said owners being referred to as ‘Mineral Owners’.” (My emphasis.) Consequently, from that language anyone having anything'to do with, or interested in, that agreement had to anticipate that it would be signed by all those having any mineral rights in the land in the pooled area of 640 acres included in which was the land with the Thompsons’ mineral rights.
Article 1945, as pointed out in the present majority opinion, is the proper article of our LSA-Civil Code to be consulted in con *897 struing a contract according' to the intention of the parties and, as further pointed out, in the fourth paragraph of that article, it is the “common intent * * * that is, the intention of all [the parties] that is to be sought for;” and “if there was a difference in this intent, there was no common consent and, consequently, no contract.” But at the same time, we should not overlook the third paragraph of that same article in ■ which it is prescribed “That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences; * * *.” Certainly the words in the agreement under consideration in this case appear to me to be “clear and explicit” and it can hardly be contended that they lead to any “absurd consequences”.
In view of the wording of the contract and the mention therein made of who was to sign it, it seems unimportant to me whether the names were inserted in the body of the instrument or not. Throughout the document it is made clear by the wording that all interested parties would be asked to sign the covenants therein contained and, in my opinion, when anyone who was asked to be a party to it signed it, he did so with the understanding that any other party, with a recorded mineral right or interest in any of the lands in the pooled area, would also sign. If he had any misapprehensions whatsoever, he should have withheld his signature until he had investigated from the public records who the owners of the mineral rights were and on ascertaining that there were some whose rights might have adversely affected his, he should have made proper reservation as to these.
The case of Achee v. Caillouet, 197 La. 313, 1 So.2d 530, 532, cited in the prevailing opinion, is not in my opinion authority on this point because from a mere reading of the opinion it cannot be said whether the language of the joint lease therein referred to bore any resemblance to the wording of the pooling agreement in this case or not. In the opinion it is stated: “Caillouet’s name was not mentioned at any time, nor was it stated that any person other than Achee would be asked or permitted to sign the instruments.” In this case, as I have already shown, the agreement itself conveyed the information that it was to be signed by owners of the mineral rights and interests in the pooled lands and by consultation of the Conveyance records of the Parish it would have been made apparent who all these owners were.
I think it should be borne in mind that Gibson is not a party to this suit and that he has no longer any mineral rights or interests in the 140 acres in which the Thompsons own their interest. He stands neither to gain nor lose anything in this law suit. The proceeding was instituted by the Arkansas Louisiana Gas Company. That company, through its officers and agents, pro- . voked and engineered all transactions which led to this litigation. Its agents and attorneys are the ones who prepared the pool *899 ing agreement and obtained the signatures of all the parties thereto, including Gibson 'and the Thompsons, and in my judgment it comes with poor grace on its part to endeavor, through the testimony of a 79 year old and practically illiterate Negro (and I say this with all due respect to his race) to now repudiate its solemn obligations to all parties to its agreement.