96 So.2d 41

**J. B. ELKINS**

v.

**W. B. ROSEBERRY, Jr., et al.**

No. 43129.

May 6, 1957.

Rehearing Denied June 10, 1957.

Campbell & Campbell, by John T. Campbell, Minden, for defendants-appellants.

Roy M. Fish, Springhill, for plaintiff-appellee.

PONDER, Justice.

The plaintiff, J. B. Elkins, as landowner, brought suit seeking to have decreed extinguished, by the liberative prescription of ten years, a certain mineral reservation in favor of W. B. Roseberry, contained in a deed executed by Roseberry on December 10, 1943 wherein Roseberry conveyed to Elkins the SE¼ of the SW¼, Section 8,

and N½ of NE¼ of NW¼, Section 17, in Township 23 North, Range 9 West, consisting of 60 acres, and reserved therein one-half of the oil, gas and other minerals in and under the described lands. The defense to the suit is that on March 18, 1946, the plaintiff and Roseberry executed a joint mineral lease in favor of Phillips Petroleum Company, which lease was for a primary term of ten years, the effect of which defendant contends was to extend the date of prescription then running against the mineral right until the expiration of the primary term of the lease, and that production from the lands prior to the expiration of the primary term of the lease prevented the accrual of prescription at the end of the primary term of the said lease. After hearing, there was judgment in favor of the plaintiff decreeing the extinguishment of the mineral reservation, and from this judgment defendant has appealed.

The sole question presented in this case is whether or not the lease executed on March 18, 1946 by Elkins and Roseberry to the Phillips Petroleum Company is a joint lease.

The appellants take the position that the lease is a joint lease. They point out that the lease designates the lessors as the "Lessor"; that it calls for one consideration and royalty to be paid to the "Lessor"; that the lease was first signed by Roseberry, the owner of the mineral reservation, and thereafter signed by Elkins, the plaintiff

herein. They advance the argument that the lessors bound themselves as one individually, acted unitedly, that the rights covered by the lease were treated as a single right and that the rentals were paid by a joint check.

■ We have examined the lease in ·question and find that it is made out in the singular to the "Lessor". The rentals are ·to be paid to the lessor and it provides in ·case of production that the royalty is to be paid to the lessor. Roseberry appears to have signed the lease first and his signature was witnessed by Mrs. Matthews and G. D. Adsit. Elkins' signature was witnessed by Tilon O'Brier and G. D. Adsit. This indicates that the parties did not sign the lease at the same time. There is no language in the lease indicating that the landowner intended to extend the mineral servitude. The mere fact that Elkins recognized the servitude in the lease could not of itself be taken as an intent to extend the servitude.

■ From an examination of the evidence, we find that Adsit was the agent and representative of the Phillips Petroleum Company and first presented the prepared lease to Roseberry who signed it. He then ·took the lease to Elkins to secure his signature. Roseberry and Adsit are both deceased. Elkins, the plaintiff, testified that when Adsit brought the lease to him to sign, with Roseberry's signature already thereon, he informed Adsit that he did not want to make a joint lease wherein the mineral servitude would be extended. He testified that he was assured by Adsit that his signing would not have that effect, and relying upon this assurance, Elkins affixed his signature to the lease. The rental checks were made out jointly to both parties and accepted by them until the expiration of the mineral servitude. Thereafter, Elkins refused to accept the rental payments and thereafter leased the minerals, covered by the mineral reservation, · to Phillips Petroleum Company. Production was not had on the property until sometime in March, 1956, some three years after the expiration of the mineral reservation.

The question presented here has been considered on many occasions by this Court and we have consistently held that it must clearly appear either from the contract itself or from extraneous evidence, submitted by the parties for the purpose of showing their intent, that the parties signing a lease intended to extend outstanding mineral interests to the primary term of the lease. We have pointed out that the intention of the parties is the controlling factor, a question of fact, to be determined by the terms of the lease or extraneous evidence. See Barnsdall Oil Co. v. Succession of Miller, 224 La. 216, 69 So.2d 21, and the authorities cited therein and Union Oil Company of California v. Touchet, 229 La. 316, 86 So.2d 50. The mere signing of a lease such as the one under considera-

tion is not sufficient to make it a joint lease in the absence of any showing that it was intended to be a joint lease.

This Court stated in Barnsdall Oil Co. v. Succession of Miller, supra [224 La. 216, 69 So.2d 24], that:

"In instances like this, where the landowner and mineral owner have granted a mineral lease with a primary term running beyond the time when prescription for non-user would ordinarily accrue but which does not contain an acknowledgment effecting an interruption of prescription, it has been many times professed that this act alone was indicative of an intention on the part of the landowner to extend the life of the servitude for such time as the lease remained in force and effect. However, the court, beginning with the decision in Mulhern v. Hayne, 171 La. 1003, 132 So. 659, never fully accepted this proposition, having held that the making of such a lease would constitute an extension of the servitude only in cases where it is shown that it was the intention of the parties to sign a joint lease. Bremer v. North Central Texas Oil Co., 185 La. 917, 171 So. 75; Kennedy v. Pelican Well, Tool & Supply Co., 188 La. 811, 178 So. 359; English v. Blackman, 189 La. 255, 179 So. 306; Hightower v. Maritzky, supra 194 La. 998, 195 So. 518]; Spears v. Nesbitt, 197 La. 931, 2 So.2d 650;

Achee v. Caillouet, supra [197 La. 313, 1 So.2d 530]; White v. Hodges, 201 La. 1, 9 So.2d 433 and Baker v. Wilder, 204 La. 759, 16 So.2d 346. And, in resolving this question of fact, the court has observed in the foregoing pronouncements that it must clearly appear either from the contract itself that the landowner intended the agreement to be for the common benefit of the mineral owner and himself or, in cases where the language of the lease does not plainly express such an intention, from extraneous evidence submitted by the parties for the purpose of showing their intent."

We pointed out in the case of Union Oil Company of California v. Touchet, supra [229 La. 316, 86 So.2d 55], that: " * * * it is a firmly entrenched principle of Louisiana mineral law that no act on the part of a landowner will have the effect of extending the life of a mineral interest unless it is shown that there was a clear intention on the part of the landowner to achieve that very result."

The lease in question was not signed by the parties at the same time, it contains no specific provision to show an intent to extend the life of the mineral servitude, the uncontradicted testimony of the plaintiff shows no such intent, the plaintiff's refusal to accept the joint rentals after 1953, the date of the expiration of the servitude, and the leasing by him of the

minerals previously covered by the servitude clearly shows that there was no intent on his part to extend the life of the mineral servitude.

For the reasons assigned, the judgment of the lower court is affirmed at appellant's cost.

FOURNET, C. J., absent.