133 So.2d 175 (1961)
Lucien D. ADAM et al.
v.
Mrs. Claude L. JOHNSON et al.
No. 78.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1961.
Rehearing Denied October 9, 1961.
Certiorari Denied November 6, 1961.
*176 Nathan Greenberg, Gretna, for plaintiffs and appellants.
W. Blair Lancaster, Jr., and Thomas Barr, III, New Orleans, for defendants and appellees.
Before REGAN, YARRUT and SAMUEL, JJ.
REGAN, Judge.
Plaintiffs, Lucien D. Adam, Louis Adam, Louis Perrin, Beatrice Tranchant, widow of Milton Adam, Herman A. Adam and Edward Gilbert Perrin, instituted this action in jactitation against the defendants, the heirs of Claude L. Johnson, Sr.,[1] endeavoring to obtain the cancellation of a mineral servitude affecting two tracts of land owned by and in the possession of the plaintiffs. Plaintiffs insist that the servitude, granted in 1938, prescribed in 1948 since the defendants failed to explore for minerals within a period of ten years. Plaintiffs further requested the imposition of damages incurred as a result of defendants' refusal to cancel the inscription of the mineral servitude in the conveyance records of Jefferson Parish and also prayed for a judgment in the amount of $1,850, which represented rent collected by defendants emanating from the mineral lease.
Defendants pleaded the exceptions of no cause of action and misjoinder of parties defendant, which were overruled.[2] They then answered and admitted non-user of the servitude during a ten year period; however, they explained that the prescriptive period was extended to April 1, 1956, by virtue of the execution of a joint mineral lease by the servitude owner and the landowner and that drilling was commenced within the life of this lease.
From a judgment dismissing plaintiffs' suit, they have prosecuted this appeal.
Chronologically related, the undisputed pertinent facts are these:
On March 22, 1938, plaintiffs and their ancestors in title granted a servitude on 1/10 of the minerals on two tracts of land in Jefferson Parish. Incidentally, a dry hole was drilled during this year.
On April 1, 1946, plaintiffs and the defendants' ancestor in title, Claude L. Johnson, Sr., entered into a mineral lease with James Webb, who subsequently assigned his rights therein to the Texas Company. The lease agreement provided in part:
"It is further understood and agreed by and between the parties hereto that while the hereinabove described leased property is composed of four tracts forming one contiguous body, the ownership of each tract being vested in the respective lessors in the proportions hereinabove set forth, nevertheless, it is the intention of the parties hereto that this lease is and shall be a joint lease, and that all the leased property is hereby pooled, communitized and unitized for all purposes hereunder * * *."
In March of 1956, the Texas Company commenced drilling operations on the first well on this unitized property, which is still producing.
Between April 1, 1946 and June 8, 1956, the mineral lessee paid to Claude L. Johnson, Sr. before his death in 1950, and subsequently to his heirs, the rentals for Johnson's proportionate interest in the minerals.
*177 The trial court, relying upon the rationale expressed by the organ of the court in the case of Mulhern v. Hayne[3], was of the opinion that the 1946 lease was a joint lease between the landowner and the servitude owner, which, in effect, extended the life of the servitude through the ten year primary term of the joint lease.
Counsel for plaintiffs initially contends that the ratio of the Mulhern case has been circumscribed by later decisions; therefore, its rationale is not apposite to the case before us.
In the Mulhern case, plaintiff had purchased land from the defendants in February 1919 and defendants reserved ½ of the minerals. In 1926, plaintiff and defendants entered into a joint lease for a primary period of five years. Between 1919 and 1929 there was no exploration for minerals, and thereafter, plaintiff instituted suit to cancel defendants' servitude, asserting the loss thereof through ten years' non-user. In rejecting plaintiff's demand, the court stated that plaintiff had acknowledged defendants' mineral interest merely by entering into a joint lease with him, and this acknowledgment had the effect of interrupting prescription in conformity with LSA-C.C. Art. 3520, which provides:
"Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribe."
Plaintiffs' counsel has cited several cases to support his contention that the Mulhern rationale has lost its effect in view of the judicial erosion thereof.
It is true that the Mulhern doctrine has been modified by subsequent decisions.[4] The most significant departure therefrom is *178 the conclusion that the execution of a joint lease extends the prescriptive period to the date of the expiration of the lease, but that this fact alone is insufficient to interrupt prescription and start its running anew from the date of the lease. The courts have reasoned that in the absence of an express statement to the effect that the parties intend prescription to be interrupted, the intent is no longer presumed from the mere signing of the lease.
The second modification which we have observed in subsequent cases is the court's refusal to presume an intention to execute a joint lease merely because the parties have all signed the instrument, as it did in Mulhern. On several occasions where the lessors failed to execute the document at the same time, the court has considered the document and its counterparts with suspicion and finally reasoned that the parties thereto had not intended to execute a joint lease, since other positive evidence of such intent did not appear in the record. While the latter trend does not affect the Mulhern rationale, its practical application has produced results which could be considered a departure therefrom.
However, the later decisions affirm the principle that a joint lease extends the prescriptive period to the date of its expiration in instances where prescription ordinarily would run during the effective term of the lease.
Therefore, we must now determine whether the document in question is in fact a joint lease.
The agreement clearly states that the parties thereto intend to execute a joint lease, although it is conceded that the lessors did not execute the document in the presence of each other. In the past, as we have said, judges have viewed with suspicion leases executed by the lessors at different times or in several counterparts and concluded therefrom that the parties did not intend to execute a joint lease.
However, the parties who confected the lease which is involved in this litigation specifically authorized the execution of the joint lease by separate documents. The lease in part reads:
"This lease may be executed in as many counterparts as may be deemed necessary and when so executed this instrument shall have the same effect as if all parties had executed the same instrument."
The trial court reasoned that in the absence of evidence to the effect that the parties did not intend to execute a joint lease that the above provision was ample to overcome the suspicious circumstance of separate signings, and we agree with this conclusion.
Plaintiffs' final contention is that Mulhern has been impliedly overruled by the decision of Reagan v. Murphy.[5]
The question posed for the court's consideration in the Reagan case was whether a mineral lease is subject to prescription through ten years non-user, and the court concluded that a lease is a personal contract; therefore prescriptive statutes relative to mineral servitudes and real rights were inapplicable.
Therefore, counsel for plaintiffs asserts that a mineral lease, which is considered to be a personal right, can have no effect on a real right, in the absence of a specific declaration set forth in the joint lease.
We find no merit in this contention. If the servitude under any condition was to expire in 1948, then it would be pointless for Johnson to execute a joint lease with a primary term of ten years in 1946. It is obvious that the lease itself would be invalid were the servitude not extended *179 until the expiration thereof. Further, we think it is fair to presume from the fact that the landowner and the servitude holder joined in the lease that they intended to execute a valid contract, so we must necessarily conclude that the contract itself is sufficient evidence of the landowner's intent to extend prescription, and we fail to see how this reasoning has been affected by the Reagan decision.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] The defendants are Claude L. Johnson, Jr., Ethelwyn Davidson, widow of Claude L. Johnson, Sr., Percival R. Johnson, Beverly V. Johnson and Shirley Johnson, wife of Raymond W. Gregg.
[2] Defendants based their exception of no cause of action upon plaintiffs' failure to allege that they are in possession of the mineral interest. The court properly overruled this exception stating that the owner of land who is in possession may bring a jactitory action against a claimant of a mineral interest, and must only allege ownership of, or the possession of the land to state a cause of action. See Ware v. Baucum, 1952, 221 La. 259, 59 So.2d 182.
[3] 1931, 171 La. 1003, 132 So. 659.
[4] The following three cases are departures from the harsh ruling of Mulhern, insofar as the landowner in whose favor prescription is tolling is concerned:

Baker v. Wilder, 204 La. 759, 16 So. 2d 346, 351The decision turned on a factual finding that the landowner did not join with the mineral owner in executing a joint lease with the intention to sign a joint lease. The court, assuming arguendo that the landowner knew he was signing a joint lease, said the mere signing was insufficient acknowledgment to interrupt prescription. The court then quoted the following language from Hightower v. Maritzky, 194 La. 998, 195 So. 518, 521:
"In order for an acknowledgment by a landowner that his land is subject to certain mineral rights in favor of a person named in the acknowledgment to have the effect of interrupting prescription by which such rights are extinguished the intention that the acknowledgment shall have that effect must be expressed in unmistakable terms".
Barnsdall Oil Co. v. Miller, 1953, 224 La. 216, 69 So.2d 21This case also turned on a factual finding that there was no joint lease because the parties thereto had signed at different times and there was no positive evidence of an intention to execute this joint lease that would overcome the suspicious circumstance. In this case the court plainly stated that a joint lease has the effect of extending prescription to the end of the lease in the absence of a specific acknowledgment by the landowner that he intends to interrupt prescription upon execution of the lease.
Spears v. Nesbit, 1941, 197 La. 931, 2 So.2d 650This case, in our opinion, contains a more accurate reiteration of the holding of the Mulhern case. Here the court said Mulhern reached the correct result although it applied improper reasoning. Spears stated that Mulhern held that a joint lease alone is sufficient acknowledgment to interrupt prescription, not merely to extend it to the end of the lease. In many other decisions, the court itself has stated that Mulhern holds merely that a joint lease extends prescription to the end of the lease. In reading Mulhern it is extremely difficult to understand how the later interpretations of the Mulhern holding were reached, in view of the fact that the court in Mulhern cited Article 3520 as authority for its result in finding that acknowledgment interrupted prescription and in view of this language quoted therefrom:
"* * * By joining in this lease plaintiff thereby recognized all of the rights of his colessors, and he cannot escape the effect of his written acknowledgment, which, in our opinion, we must hold to be an interruption of the then accruing prescription." [171 La. 1003, 132 So. 660.] (Emphasis added)
[5] 1958, 235 La. 529, 105 So.2d 210.