134 So.2d 572 (1961)
Nomie NAMIE, Plaintiff-Appellee,
v.
Joe R. NAMIE et al., Defendant-Appellant.
No. 9544.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1961.
Rehearing Denied November 22, 1961.
Certiorari Denied January 15, 1962.
*573 Hobbs & Yeates, Minden, for appellant.
Meadors, Shaw & Meadors, Homer, for appellee.
Before HARDY, GLADNEY and BOLIN, JJ.
HARDY, Judge.
Plaintiff, Nomie Namie, instituted this action for a declaratory judgment, praying recognition of his rights to one-half of the bonus, royalties and rentals accruing from an oil, gas and mineral lease executed by his brother, Joe R. Namie, in favor of Union Producing Company, covering specifically described tracts of land containing 160 acres located in Bienville Parish, Louisiana. Named as a defendant, in addition to Joe R. Namie and Union Producing Company, was the First National Bank of Shreveport, which was impleaded as agent under an escrow agreement between Joe Namie and Union Producing Company. After disposition of numerous exceptions filed by the parties defendant, the case was tried on the merits upon the basis of stipulated facts and documentary evidence. Judgment was rendered in favor of plaintiff as prayed, from which only the defendant, Joe R. Namie, has appealed.
The facts are not in dispute. By act of partition dated September 27, 1949, executed by Nomie and Joe Namie, the former conveyed title to the property involved in this action to his brother, Joe, reserving one-half of the mineral rights therein. The said instrument of partition contained an agreement which we deem material to a determination of this case, and, therefore, quote, in extenso, as follows:
"It is further agreed and understood that Joe Namie shall have the full right to make and execute and sell any future oil and gas leases covering this 200 acres of land above described (which included the 160 acres concerned in this suit) and Nomie Namie does by this act grant unto Joe Namie a full and complete power of attorney to make and execute said oil and gas leases and to sign his name thereto, with the understanding that any bonus and rental money received from said lease sales shall be equally divided between Joe Namie and Nomie Namie. It is further agreed and understood that all production of oil and gas and other minerals and all royalties received therefrom shall be equally divided between Joe Namie and Nomie Namie." (Emphasis supplied.)
By a standard form agreement dated February 4, 1959, Joe R. Namie, designated therein as lessor, executed an oil, gas and mineral lease in favor of Union Producing Company, as lessee, which instrument contained the following pertinent provisions:
(1). Payment of a consideration in the nature of a cash bonus in the sum of $4,000.
(2). Designation as the primary term of the lease for a period of five years from October 1, 1959.
(3). Payment of annual delay rentals in lieu of drilling operations in the amount of $160.
(4). Standard provisions as to payment of royalties and continuance of the lease in force and effect as long as oil, gas or other minerals should be produced from the leased premises.
*574 Contemporaneously with the execution of the lease agreement, Joe Namie and Union Producing Company, on the same date of February 4, 1959, entered into an escrow agreement, which, after reciting that Joe R. Namie had executed an oil, gas and mineral lease covering the subject property in favor of Union Producing Company, provided that the said lease, the check of the Union Producing Company in the sum of $4,000, and a receipt therefor signed by Joe R. Namie should be and were deposited in escrow with the First National Bank of Shreveport. The conditions of the escrow agreement were that Union Producing Company might, at its option, prior to September 1, 1959, examine title to the property, and in the event of the existence of any defects therein or encumbrances therein, Joe Namie should be allowed thirty days from date of notification thereof to meet such requirements as the lessee's attorneys might make; that in the event of disapproval of the title after examination by lessee's attorney, and failure to meet their requirements, the escrow agent, upon request of Union Producing Company, should return the lease and receipt to Joe Namie and the check to the company; that in the event of failure of notification of defective title and termination of the transaction, to the escrow agent by the lessee, the escrow agent should hold the lease, check and receipt until October 1, 1959, and thereafter lessee might demand delivery of the lease and receipt, whereupon the escrow agent should make delivery thereof; and transmit the check to Joe Namie.
The stipulations as to the testimony of witnesses justify the conclusion that the transactions of lease and escrow between Joe Namie and Union Producing Company were designed and intended by the former to permit the tolling of the ten-year period of prescription, liberandi causa, under which circumstance the interest of plaintiff would expire and Joe Namie would become the owner of the entire mineral interest in the subject property. Despite this apparent evidence of bad faith, we pretermit consideration thereof as a factor in the determination of the issue presented.
By letter dated September 9, 1959, counsel for plaintiff made formal demand upon defendant, Joe Namie, the Union Producing Company and the First National Bank for payment of one-half of the bonus money in escrow, together with one-half of all future royalties and rentals payable under the lease.
Specifications of error relied upon by appellant are set forth as being:
(1). Consideration by the trial court of the issue of fraud, which was not alleged by plaintiff.
(2). Failure to apply the law relating to mineral rights under the facts of the case, and the consequent holding that the issues presented were contractual; and
(3). Error in determining the effective date of the lease as being coincidental with the date of its execution.
The issues presented by this appeal concern the determination of the effective date of the lease between Joe Namie and Union Producing Company and a resolution as to whether the execution of said lease had the effect of extending the period within which plaintiff was entitled to the benefits stipulated under his original reservation.
Appellant primarily relies upon his plea of prescription of ten years, liberandi causa. The basis of this contention rests upon the claim that the lease here under examination did not become effective, by reason of the escrow agreement, until October 1, 1959, which was ten years and four days subsequent to the reservation of the mineral servitude by plaintiff in the act of partition.
We are unable to agree with this conclusion. The lease speaks for itself. It was executed approximately eight months, more or less, prior to the expiration of the ten-year period, and, despite the escrow agreement, we think there is no ground for question as to the conclusion that the leasehold *575 rights became effective upon the date of execution of the instrument of lease. The fact that actual delivery of the bonus consideration recited in the lease was delayed cannot be regarded as affecting the rights of the parties to the lease. As far as the terms of the instrument are concerned, the lessee, Union Producing Company, would have been privileged to enter upon the property and begin operations for mineral development thereof at any time on or after February 4, 1959.
In connection with this proposition, we think the conclusion is inescapable that the signature of Joe Namie, as lessor must be considered not only as evidence of his individual capacity, but, further, as execution by and in the quality of agent and attorney in fact for his brother, under express provisions of the mandate included in the act of partition. This element serves to effectively distinguish the present case from those in which our courts have considered and pronounced the effect of leases executed by joint parties at different times, or by one who was granted the exclusive right to execute mineral rights. Thus, in Nolen v. Bennett, La.App. (2nd Circuit, 1960, writs denied), 119 So.2d 636, 640, we held that the act of sale under which the purchaser was granted the right to execute mineral leases without the signature of the vendor did not constitute him as the vendor's agent. Specifically, the opinion declared:
"Therefore, forasmuch as the lease did not include the signature of appellant and since the doctrine of agency is without application, the lease may not in anywise be considered a joint lease."
In Elkins v. Roseberry, 233 La. 59, 96 So.2d 41, 43, the Supreme Court had under consideration the effect of a lease which was not signed by the parties at the same time, and declared:
"The mere signing of a lease such as the one under consideration is not sufficient to make it a joint lease in the absence of any showing that it was intended to be a joint lease."
It has further been held that the prescription resulting from nonusage is not extended under the term of a lease in favor of a reservation of a royalty interest where there has been no production within the ten-year period. Vincent, et al. v. Bullock, et al., 192 La. 1, 187 So. 35.
The resolution of the issues presented in the instant case does not turn upon the extension of the prescriptive period. Some confusion has arisen with respect to the holding in the case of Mulhern v. Hayne, et al., 171 La. 1003, 132 So. 659, by reason of the language employed in the opinion, which declared that the joinder of the landowner with the parties who had reserved mineral rights as colessors, effected an interruption of prescription. However, this holding was carefully clarified and explained by the opinion of the Supreme Court, on rehearing, in Achee, et al. v. Caillouet, et al., 197 La. 313, 1 So.2d 530, 536, which stated:
"In the Bremer case, explaining the theory on which the ruling in the Mulhern case was based, we said that Mulhern's joining the owners of the servitude in the execution of the oil and gas lease not only evidenced his intention of acknowledging their rights, but evidenced also his `consent that they have further time within which to exercise those rights'. We said:
"`Manifestly the life of the servitude had to be extended to make the five-year lease valid for that length of time.' (185 La. 917, 171 So. 77.)
"In other words, Mulhern, in order to make the five-year lease effective, had to agree that the course or running of prescription against his co-lessors' servitude be broken into or hindered and the life of it extended, because otherwise it would have expired prior to the end of the primary term of the lease.

"As defined by Webster's New International Dictionary, the word `interrupt' *576 means `To break into, or between; to stop or hinder by breaking in; to interfere with the course, current, or motion of. The word `interruption' means `Act of interrupting, or breaking in upon; state by being interrupted. * * * A breach or break, caused by the abrupt intervention of something foreign'.
"In those cases in which we said that the effect of the landowner's joining the owners of the servitude in making a mineral lease was to `interrupt' the running of prescription, we meant that the prescription was interrupted in the sense that it was broken into, hindered, or stopped, as defined in the dictionary, and not in the sense that the word is used in the Civil Code relating to the acknowledgment of a debt.
"In Hightower et al v. Maritzky, et al., 194 La. 998, 195 So. 518, 521, we said that it was explained in the Bremer case
"`* * * that the decision in the Mulhern case was based upon the proposition that it was impossible for the landowner and the holder of the mineral rights to make a joint mineral lease of the land for a term extending beyond the expiration of the period of prescription without intending thereby to extend the remaining period of prescription.'
* * * * * *
"To hold that Achee's signing the lease contract evidenced a purpose and intention on his part so to interrupt prescription as to cause it to run anew for a full period of 10 years from the date of the lease would be contrary to reason. It was clearly against his interest to prolong the life of the servitude for that length of time. But it was to his interest to extend the remaining period of prescription so as to make the lease effective." (Emphasis supplied.)
Similarly, in Barnsdall Oil Company v. Miller, 224 La. 216, 69 So.2d 21, the opinion of Mr. Justice McCaleb held that the lease under examination disclosed that the parties executed the same at different times, which fact dispelled any idea that the instrument was intended to constitute joint action extending the prescriptive period.
On the basis of the above cases, and numerous others not cited in this opinion, we think the principle is well established by our jurisprudence to the effect that prescription, liberandi causa, with respect to the nonusage of a servitude involving mineral interests, is not and cannot be extended in the absence of the expression of the clear intent of the parties involved.
However, in the instant case we are concerned with facts which are at variance with those considered in the cases cited supra. The defendant, Joe Namie, in order to execute a valid and enforceable mineral lease covering the subject property, was required to execute the same not only in his individual capacity, which would have covered only his undivided one-half interest in the minerals as of February 4, 1959; not only as authorized to execute a lease to the whole interest, but, further, as agent for his brother under the specific and express mandate included in the act of partition. Regardless of his obvious scheme and design to obtain the benefit of the running of the prescriptive period through and by means of the provision of the escrow agreement, this could have no bearing upon the nature and effect of his action in the execution of the lease itself. Under such circumstance, and in view of our finding that the lease dated February 4, 1959, was immediately valid and effective as between lessor and lessee, it follows that the execution thereof extended by contract the interest of plaintiff in the minerals so long as the lease continued in effect.
We do not intend that this conclusion be construed as effecting an extension of the prescriptive period, but merely as a contractual extension of the rights of the parties *577 up to the termination of the lease. We point out that such termination does not rest upon the period of the primary term but depends, rather, upon the compliance by the lessee with its obligations under the instrument of lease. For example, the lessee might at any time terminate the effect of the lease by surrender of its rights, cancellation thereof, failure to pay delay rentals, etc.
Adverting to the opinion of now Mr. Chief Justice Fournet in Vincent v. Bullock, supra, we are interested in the reference to the possible applicability of R.C.C. Article 792, providing that in the event the owner of an estate to whom a servitude is due is prevented from using it by any obstacle which he can neither prevent nor remove, the prescriptive period of nonusage does not run against him as long as the obstacle remains. It might be considered in the instant case that this codal provision is applicable under the facts, inasmuch as plaintiff was placed at the complete mercy of defendant, who could and possibly did create an insurmountable obstacle to the enjoyment of any benefits to which plaintiff was entitled. However, in view of our conclusion above stated, we think consideration of this issue would be academic in nature and constitute mere surplusage. Nonetheless, it is a factor which should be kept in mind as bearing upon the, as yet undetermined, extent to which a co-owner of mineral rights can go in his efforts to prevent the enjoyment or benefits by other co-owners.
For the reasons assigned the judgment appealed from is affirmed at appellant's cost; and, accordingly,
It is ordered, adjudged and decreed that plaintiff, Nomie Namie, be and he is recognized as owner and entitled to one-half of the bonus, of the delay rentals and of all royalties which may be due, or may become due, which have been paid, or may be paid, under the terms of that certain oil, gas and mineral lease of date February 4, 1959, executed by Joe R. Namie as lessor in favor of Union Producing Company as lessee, covering the property described as being:
The Southwest Quarter of Southwest Quarter (SW ¼ of SW ¼) of Section Eighteen (18), and South Half of Northeast Quarter (S ½ of NE ¼) of Section Nineteen (19), Township Seventeen (17) North, Range Seven (7) West, and the Northwest Quarter of Southeast Quarter (NW ¼ of SE ¼) of Section Thirteen (13), Township Seventeen (17) North, Range Eight (8) West, in Bienville Parish, Louisiana, containing 160 acres, more or less, which lease has been filed and recorded in Book 235, Page 25 of the Conveyance Records of Bienville Parish.
BOLIN, J., dissents.
BOLIN, Judge (dissenting).
Conceding that the effective date of the oil and gas lease was February 4, 1959, such an instrument could extend the prescriptive period of the previous mineral reservation for the primary term of the lease, or as long as production of oil and gas was had thereunder. However, the jurisprudence seems to be now fairly clear that when an oil and gas lease is used as the basis for either an interruption or extension of the prescriptive period, there must be a clear intent expressed in either the instrument itself or otherwise. For example, in the case of Barnsdall Oil Co., et al v. Miller, 224 La. 216, 69 So.2d 21, 24 (1953), we note the following:
"In instances like this, where the landowner and the mineral owner have granted a mineral lease with a primary term running beyond the time when prescription for nonuser would ordinarily accrue but which does not contain an acknowledgment effecting an interruption of prescription, it has been many times professed that this act alone was indicative of an intention on the part of the landowner to extend the life of the servitude for such time as the lease remained in force and effect.

*578 However, the court, beginning with the decision in Mulhern v. Hayne, 171 La. 1003, 132 So. 659, never fully accepted this proposition, having held that the making of such a lease would constitute an extension of the servitude only in cases where it is shown that it was the intention of the parties to sign a joint lease. Bremer v. North Central Texas Oil Co., 185 La. 917, 171 So. 75; Kennedy v. Pelican Well Tool & Supply Co., 188 La. 811, 178 So. 359; English v. Blackman, 189 La. 255, 179 So. 306; Hightower v. Martizky, supra; Spears v. Nesbitt, 197 La. 931, 2 So.2d 650; Achee v. Caillouet, supra; White v. Hodges, 201 La. 1, 9 So.2d 433 and Baker v. Wilder, 204 La. 759, 16 So.2d 346. And, in resolving this question of fact, the court has observed in the foregoing pronouncements that it must clearly appear either from the contract itself that the landowner intended the agreement to be for the common benefit of the mineral owner and himself or, in cases where the language of the lease does not plainly express such an intention, from extraneous evidence submitted by the parties for the purpose of showing their intent."
We also find the following language in the later case of Elkins v. Roseberry, 233 La. 59, 96 So.2d 41, 43 (1957):
"The question presented here has been considered on many occasions by this Court and we have consistently held that it must clearly appear either from the contract itself or from extraneous evidence, submitted by the parties for the purpose of showing their intent, that the parties signing a lease intended to extend outstanding mineral interests to the primary term of the lease. We have pointed out that the intention of the parties is the controlling factor, a question of fact, to be determined by the terms of the lease or extraneous evidence. See Barnsdall Oil Co. v. Succession of Miller, 224 La. 216, 69 So.2d 21, and the authorities cited therein and Union Oil Company of California v. Touchet, 229 La. 316, 86 So.2d 50. The mere signing of a lease such as the one under consideration is not sufficient to make it a joint lease in the absence of any showing that it was intended to be a joint lease.
* * * * * *
"We pointed out in the case of Union Oil Company of California v. Touchet, supra [229 La. 316, 86 So.2d 55], that: `* * * it is a firmly entrenched principle of Louisiana mineral law that no act on the part of a landowner will have the effect of extending the life of a mineral interest unless it is shown that there was a clear intention on the part of the landowner to achieve that very result.'"
Therefore, we must conclude that the mere execution of the oil and gas lease in the instant case did not extend the mineral servitude beyond September 27, 1959. To the contrary, the very basis of Nomie's claim is that his brother Joe had devised a scheme to prevent him from participating in any of the benefits to which he was entitled as a result of his previous mineral reservation.
Therefore, the only basis for allowing Nomie to recover any benefits accruing subsequent to September 27, 1959, is pursuant to contract, and more specifically to that portion of the mineral reservation which provided for the agency relationship. In my opinion, to permit the accrual of any benefits under this contract beyond September 27, 1959, in the absence of such an expressed intent on the part of the landowner, would require giving an interpretation to the contract repugnant to LSA-C.C. art. 3460, as the waiver of prescription in advance. In other words, Nomie contends in effect that the contract not only obligated Joe Namie to execute an oil and gas lease within the life of his mineral reservation, but to execute the lease in such a manner as to extend his mineral reservation for the entire term thereof. Our courts have *579 always zealously guarded against approving any contracts with any such expressed purposes or when any attempt was made to waive such future prescription by way of subterfuge.
I think the contract in the instant case, as applied to the general law of agency, required Joe Namie to execute such an oil and gas lease on the property in question that would inure to the benefit of his principal on a 50% basis, or one-half of the original bonuses. To say the law imposed upon him any greater duty, would clearly be contrary to his expressed intent and desire; and, in my opinion, such conclusion could only be reached by holding that Joe and Nomie so contracted on September 27, 1959. Such a contract would be an attempted waiver of prescription in advance which is prohibited by our Civil Code and jurisprudence.
I, therefore, respectfully dissent.