BOLIN, Judge.
W. E. Hall and his co-owners filed this concursus proceeding, alleging themselves to be the owners of an oil and gas lease dated October 27, 1936, affecting, among other properties, the East Half of the Northwest Quarter of Section 5, Township 17 North, Range 11 West, Bossier Parish, Louisiana. Plaintiffs, as lessees, had contributed their proportionate share of the cost of drilling a well which was located on a conservation unit of 670 acres and the funds deposited in the registry of the court represented the royalties attributable to the 80 acres heretofore described. Some of the lessees also owned an interest in the royalties. There are two sets of claimants to the funds on deposit. One such group we shall identify as the Hall group and the other as the Meadows, LeMay, King group. After the disposition of several preliminary exceptions and motions judgment was rendered in the lower court recognizing the Hall group as being entitled to the royalty monies on deposit. Only the King heirs have appealed from the judgment.
Two appellees filed in this court a motion to dismiss the appeal on the ground that same was abandoned for the reason the transcript was not timely lodged in this court on the day ordered by the district court. This motion to dismiss, being based on an irregularity and not being timely filed pursuant to the provisions of Louisiana Code of Civil Procedure Article 2161, is overruled.
A group of appellees have also filed in this court pleas of res judicata and no cause or right of action. We shall give consideration to these pleas after a determination of the case on its merits.
This litigation was generated after the partition by deeds of 193 acres of land located in Bossier Parish. (The 193-acre tract was referred to by the parties and by the lower court as the 200-acre tract.) Before the partition, the land and minerals were owned in indivisión by four members of the Edwards family in the following proportions :
Lucille Edwards %
Mamie Edwards Stinson
J. A. Edwards %
Frank Edwards %
The land was divided among the four parties listed above by means of four separate deeds. These deeds were all dated January 4, 1934, and in each the grantor conveyed his interest in a portion of the real estate, reserving his undivided interest in the minerals under the entire tract. The deeds were recorded at the same time, bearing consecutive registery numbers, and each contained the following provision:
“The purpose of this deed being to effect a partition.”
After the partition Frank Edwards became the owner of the surface rights of the 80 acres described as the East Half of the Northwest Quarter, Section 5, Township 17 North, Range 11 West. The minerals in and under this tract, as well as the remainder of the 193-acre tract, were owned in indivisión in the same proportion after the partition as before.
Frank Edwards died in 1935 and thereafter his widow and only heir sold the 80-acre tract to Morris Anisman, reserving the mineral rights. In 1943 Anisman con *722 veyed the tract to Will King likewise reserving and excepting from the conveyance all the minerals. The title of plaintiffs-appellees is derived from the Edwards family and the title of the appellants is claimed to be derived from Will King.
On October 27, 1936, the Edwards family and all other persons, to whom they had sold fractional surface royalty or mineral interests, executed an oil and gas lease covering the entire 193-acre tract. A’ well was drilled on this land but not on the 80 acres previously owned by Frank Edwards. It was completed as a commercial producer on March 13, 1937, within the primary term and has continued to produce in commercial quantities since that date.
On September 11, 1956, the Louisiana Department of Conservation created a 670-acre unit which included the entire 193-acre Edwards tract. A well was completed in this unit May 27, 1958. The instant case involves ownership of the proceeds attributable to the 80-acre tract described above.
The issues presented for decision are:
1. When the Edwards family executed the partition in 1934, did they create four separate servitudes or did they divide only the surface while maintaining a single servitude?
2. Assuming four servitudes were created, did the oil and gas lease of October 27, 1936 constitute a pooled or communitized lease covering the entire 193 acres so that drilling on any portion of the tract interrupted prescription on all servitudes subject to the lease?
In answer to the first issue stated, the lower court held the partition established separate mineral servitudes on the various tracts but resolved the second issue affirmatively by holding the entire 193 a.cres had been voluntarily pooled by the lease of October 27, 1936 so that drilling on any portion of the 193-acre tract interrupted prescription 'on the entire subject lease.
In disposing of the case we prefer not to pass on the correctness of the lower court’s decision- on the first issue. Rather, we shall assume but not admit, for the sake of argument, that the lower court was correct in holding the 1934 partition created four separate servitudes and our discussion shall be devoted to the second issue.
Owners of separate mineral servi-tudes may, for their common benefit, execute a single oil and gas lease covering the entire interest of the lessors. In such an instance, if the lease is a joint or pooled lease, the drilling of a single producing well anywhere on the leased premises will maintain the entire lease in effect and will also interrupt prescription on all mineral servitudes subject thereto. Nabors v. Producers Oil Company, 140 La. 985, 74 So. 527, L.R.A. 1917D (1917) ; United Gas Public Service Company v. Eaton, 153 So. 702 (La.App. 2 Cir., 1934) cert. denied.
Whether a particular oil and gas lease becomes a “pooled lease” depends on whether the lease contract is joint or sever-able within the meaning of Louisiana Civil Code Articles 2080 and 2081, which in turn depends upon the intention of the parties. Shell Petroleum Corporation v. Calcasieu Real Estate and Oil Company, 185 La. 751, 170 So. 785 (1936).
The lease contract in the instant case does not expressly provide that it is a pooled lease, however, the true test of the nature of the contract should be the intent of the parties, as revealed by the language of the contract and the subject matter to which it refers. In determining the intention of the parties, we are in full accord with written reasons of the trial judge in finding:
“ * * * In the original lease in 1936, all. of the owners of surface rights, minerals and royalty were joined as parties *723 and their proportionate interest in the tract was set forth. The legal description of the lands leased was set forth in composite of the 200-acre tract. The fact that the royalty owners were joined and the description of the lands owned by each was not given separately, indicate an intention to grant a pooled lease.”
Appellants rely on an alleged presumption that a lease, although signed by both the landowner and the servitude owner, is not a pooled lease, and in support of this presumption have cited the following cases: Barnsdall Oil Company v. Miller, 224 La. 216, 69 So.2d 21 (1953); Elkins v. Roseberry, 233 La. 59, 96 So.2d 41 (1957); Adam v. Johnson, 133 So.2d 175 (La.App. 4 Cir., 1961) cert. denied.
The cited cases are factually distinguishable from the instant case in that the landowner and the servitude owner executed a single oil and gas lease in which the primary term ran beyond the time when prescription for nonuser would ordinarily accrue. The question was whether by executing the lease the landowner intended to extend the prescriptive period on the servitude. The cases correctly held in the absence of an expressed declaration or circumstances evidencing a clear intention that this agreement was to be for the common benefit of the landowner and the mineral owner no such intention would be presumed. In other words, in the cited cases it would have been against the interest of the landowner to execute a joint lease because it would mean the servitude against his land would be extended beyond the ordinary prescriptive period, and absent circumstances to establish an intention to so extend the servitude the lease would not be considered joint.
In the situation presented in the instant case it was not against the landowners’ interest to execute a joint or pooled lease because each was giving up an interest in his own tract in exchange for an interest in another tract and the benefits anticipated were mutual. Furthermore, the primary term of the lease did not extend beyond the ordinary prescriptive period and production was obtained within the primary term. Each owner in the area described by the lease agreed to share in the proceeds in the proportion that his individual interest bears to the entire 193 acres.
For the foregoing reasons we find the mineral lease of October 27, 1936, effectively pooled or communitized the interests of all the landowners and the mineral servitude owners and production on any portion thereof interrupted the running of prescription on the entire portion.
Having affirmed the judgment it is unnecessary to pass on the exception of no cause or right of action and the plea of res judicata.
For the reasons assigned the judgment appealed from is affirmed in its entirety and is made the judgment of this court and particularly the following portion of the judgment describing the property affected:
“IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein recognizing that that certain Oil, Gas, and Mineral Lease of October 27, 1936, executed by Mrs. Mamie Edwards Stin-son, et al, in favor of E. G. Cravath, recorded in Conveyance Book 125, Page 161, Records of Bossier Parish, Louisiana, to be in full force and effect, insofar as same covers and applies to the East Half of Northwest Quarter (E/2 of NW/4) of Section 5, Township 17 North, Range 11 West, Bossier Parish, Louisiana.”
All costs of the lower court are to be paid as assessed in the judgment appealed from, the cost of this appeal is to be borne equally among all appellants.
Affirmed.