103 So.2d 84

Ben H. HINCHEE

v.

LONG BELL PETROLEUM CO.

No. 43420.

May 26, 1958.

Warren E. Slagle, Kansas City, Mo., Le-Compte, Hall & Coltharp, De Ridder, for defendant-appellee.

FOURNET, Chief Justice.

The plaintiff, Ben H. Hinchee, the owner and in possession of approximately 673 acres of land in Allen Parish, Louisiana, availing himself of the provisions of R.S. 30:101,[1] instituted suit to compel the defendant, Long-Bell Petroleum Company, to furnish him a recordable release of claims asserted by that Company to mineral rights in the said land, as well as to have his title to such minerals recognized and adjudged clear and free of the defendant's claims, and for attorney's fees in the sum of $5,000.[2] Exceptions of no right or cause of action filed by the defendant having been maintained by the district court, the plaintiff has appealed.

The record reveals that the instruments in the chains of title pertinent to this case have provisions identical with those in other

Plauche & Stockwell, by Oliver P. Stockwell, Lake Charles, for plaintiff-appellant.

1. "Whenever, by reason of the accrual of prescription, any mineral rights expire, the owner or claimant thereof shall within thirty days after written demand by the land owner furnish him with an acknowledged instrument, directing the cancellation of these mineral rights on the records. Thereafter, if the owner or claimant shall fail or refuse to comply within thirty days, he shall be liable to the land owner for a reasonable attorney's fee incurred in bringing suit to have the cancellation adjudged. He shall also be liable to the land owner for all damages suffered by him by reason of his inability to contract in regard to the mineral rights because of the noncancellation. The owner or claimant shall not be liable for damages or attorney's fee if a bona fide dispute exists as to whether or not prescription has accrued against his interest."

2. The plaintiff reserved his right to seek damages in an accounting for oil and gas produced in a unit of which this land forms a part.

deeds which have been twice considered by this Court in connection with lands in another parish,[3] and executed by the same parties, all "constituent corporations" of Long-Bell interests. These separate corporate entities, having the same president and often the same board of directors and minor officials, were organized in the main under the laws of Missouri, with principal offices being maintained at Kansas City— which accounts for the fact that the deeds, while concerned with vast tracts of land in Louisiana as well as the minerals lying thereunder, were confected by notarial act in the State of Missouri, County of Jackson. From the petition's factual allegations, supported by these instruments, it appears that on December 29, 1931, the then owner of the land here involved, Long-Bell Lumber Sales Corporation, having previously acquired the same from Long-Bell Lumber Company, sold and conveyed "all of the oil, gas and other minerals" in and under extensive areas in four townships, including the land now owned by plaintiff, to the Long-Bell Minerals Corporation, for "Ten Dollars ($10) cash, and other valuable consideration"—the result, under our jurisprudence, being the creation of a mineral servitude. On November 30, 1935, the Lumber Sales Corporation re-transferred the lands here involved to the Lumber Company which, on the same day, conveyed them to Long-Bell Farm Land Corporation. The Minerals Corporation, on February 27, 1936, was merged with and into the Long-Bell Petroleum Company, Inc., and by the provisions of that merger the former ceased to exist and all of its interests and holdings (among these being the rights under the instrument of December 29, 1931, which we construe to be a servitude) became vested in the surviving corporation, the Petroleum Company. On December 28, 1936, the Farm Land Corporation executed an instrument in favor of the Petroleum Company containing recitals that the former "has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey" to the latter, "but without any warranty * * * of title, even as to the return of the purchase price" (of $500), "all of the oil, gas and other minerals of each kind or character on, in and under, and that may be produced from" certain described tracts, including that with which we are here concerned. Thereafter, on July 31, 1944, the Farm Land Corporation and other Long-Bell constituent corporations were merged into Long-Bell Lumber Com-

3. See Long-Bell Petroleum Company, Inc., v. Tritico, 216 La. 426, 43 So.2d 782, and Long-Bell Lumber Company v. Granger,

222 La. 670, 63 So.2d 420, both concerned with lands in Beauregard Parish.

pany; and on July 9, 1945, the Lumber Company and the Petroleum Company joined as vendors in the execution of a deed conveying the lands to Carl R. Ribbeck, plaintiff's author in title, but reserving unto the Petroleum Company all of the oil, gas and other minerals. The plaintiff acquired from Ribbeck on February 27, 1950.

Counsel for plaintiff-appellant deny that the issue here is foreclosed by the rulings in the Tritico and Granger cases,[4] and state the theory of plaintiff's case to be that the 1931 mineral servitude initially acquired by the Long-Bell Minerals Corporation and transferred by merger to the Long-Bell Petroleum Company, Inc., was acknowledged with the intention to interrupt the running of prescription by the landowner Long-Bell Farm Land Corporation in the deed of December 28, 1936—that acknowledgment being shown by the declaration that the Farm Land Corporation had already granted, bargained and sold, "and by these presents does grant, bargain and sell"— so that the 1931 servitude was extended to December 28, 1946, when it terminated for ten years' non-user. As pointed out by the

district judge in his carefully considered Reasons for maintaining the exceptions herein filed, "If he is able to obtain such a declaration, the effect would be that the 1931 mineral servitude was continued in effect, without drilling operations, until December 28, 1946, thereby rendering ineffective the mineral reservation in the deed from the Long-Bell Lumber Company and the Long-Bell Petroleum Company, Inc., to Ribbeck dated July 9, 1945, under the doctrine of the Tritico case," and leaving plaintiff, through acquisition from Ribbeck in 1950, the owner of the lands unencumbered by a mineral servitude.

We are not in any wise impressed with counsel's reliance on the proposition that a second sale of minerals for a valuable consideration by the landowner to the then owner of the mineral servitude serves as an indication of the landowner's intention to interrupt the prescription then accruing against the existing servitude. In the Tritico case, where similar instruments bearing the same dates were construed, we concluded that the deed of December 28, 1936, in favor of the Long-Bell Petroleum

4. See footnote 3. Counsel say that the issue in the Tritico case was whether the act of December 28, 1936, could be said to indicate an intention on the part of the Petroleum Company *to renounce* the servitudes which had been previously created by the deeds of December 29, 1931—and the Court decided that it could not; and

that the issue in the Granger case was whether the 1936 transaction constituted an "oversale of the minerals", resulting (under the doctrine of after-acquired title) in the establishment of a new servitude in the Petroleum Company *when the 1931 servitude terminated in 1941*— and the Court decided that it did not.

Company, since the property was already burdened with a servitude, "was ineffective." 216 La. at page 458, 43 So.2d at page 793. Plaintiff's counsel argue, however, that the Federal court, in the case of Frost Lumber Industries, Inc., v. Republic Production Co., D.C., 29 F.Supp. 957, held that where the landowner joined in a deed with the mineral owner conveying a portion of the minerals to another, such action on the part of the landowner was an acknowledgment of the mineral servitude with intent to interrupt prescription; and that such ruling was affirmed on appeal, Frost Lbr. Co. v. Republic Production Co., 5 Cir., 112 F.2d 462.[5] While the holdings of the Federal courts are persuasive and are entitled to much respect, they will not be followed in the face of positive jurisprudence of this Court to the contrary, and the case relied on was decided almost twenty years ago (i. e., in 1939), before many of this Court's decisions with reference to the subject. The rules governing acknowledgment have now become firmly established and, as noted in the trial judge's Reasons, "It is well settled that an acknowledgment, in order to interrupt the running of prescription, must be

expressed and certain, must have been made for that purpose, must describe the property to which it applies, must identify the servitude sought to be interrupted, and it must clearly appear from the instrument not only that the land owner acknowledges the existence of the mineral servitude but it must also be expressed in unmistakable terms that it is the purpose of the instrument to make the acknowledgment and that it is to have the effect of interrupting the running of prescription." We find no language in the instrument of December 28, 1936, which expresses in unmistakable terms the landowner's purpose, in making the acknowledgment of the existence of the servitude, that it is to have the effect of interrupting prescription. Barnsdall Oil Company v. Miller, 224 La. 216, 69 So.2d 21; Liberty Farms v. Miller, 216 La. 1023, 45 So.2d 610; Baker v. Wilder, 204 La. 759, 16 So.2d 346; Achee v. Caillouet, 197 La. 313, 1 So.2d 530; Hightower v. Maritzky, 194 La. 998, 195 So. 518; Vincent v. Bullock, 192 La. 1, 187 So. 35; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; Frost Lumber Industries v. Union Power Co., 182 La. 439, 162 So. 37; LaDel

---

5. The language of the instruments is not reproduced but the appellate court said, speaking of the 1920 instrument of conveyance and in operating agreement, "* * * we are convinced that the instruments taken together clearly evidence a precise and practical acknowledgment of the servitude and that it would be difficult to find instruments, not carrying the purpose and intent in express words, which more clearly exhibit 'the purpose and intention of the parties making the acknowledgment to interrupt the prescription then running.'" 112 F.2d at page 467.

Oil Properties v. Magnolia Petroleum Co., 169 La. 1137, 126 So. 684; Lewis v. Bodcaw Lumber Co., 167 La. 1067, 120 So. 859; Sellington v. Producers' Oil Co., 152 La. 81, 92 So. 742; Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., 151 La. 361, 91 So. 765.

█ It follows that on July 9, 1945, the Long-Bell Lumber Company owned the lands and the minerals, the servitude of December 29, 1931, having terminated in 1941 by virtue of ten-years' non-use; and as a result of the reservations in the warranty deeds in which the Lumber Company and the Petroleum Company joined as vendors, conveying certain lands, including plaintiff's, to plaintiff's author in title, but reserving the minerals unto the Petroleum Company, there was an effective reservation for the benefit of the said Company—this being in the nature of a stipulation pour autrui, under our ruling in the Granger case. Therefore, when plaintiff acquired the land on February 27, 1950, it was burdened with the servitude resulting from the 1945 reservation for the benefit of the Petroleum Company, and he cannot succeed in this suit to have his title to the minerals recognized and adjudged clear and free of defendant's claims.

For the reasons assigned, the judgment appealed from is affirmed.

HAWTHORNE, J., takes no part.

103 So.2d 88