McBRIDE, Judge.
On November 17, 1959, a collision occurred in the intersection of Veterans Highway with Green Acres Road, in Metairie, Parish of Jefferson, between a Chevrolet sedan insured by Lumbermens Mutual Casualty Company and driven by Mrs. Gloria C. Baudier, wife of the owner thereof, and a large dump truck, owned and *179 operated by Lloyd Berthelot, of which Fidelity & Casualty Company of New York is the liability insurer. Mrs. Rosemary Nolan Johnson, a passenger in the Baudier car, sustained physical injuries. She and her husband, Marcus Johnson, filed this joint suit against the owner and driver of the Baudier vehicle, the owner of the truck, and the insurers of the respective vehicles, all in solido, Mrs. Johnson seeking to recover on her own behalf damages for her personal injuries and Marcus Johnson seeking to recover his outlay for medical expenses, etc., in connection with his wife’s injuries. On the same day this suit was filed, the same two plaintiffs filed a suit in the U. S. District Court for the Eastern District of Louisiana seeking the same relief, the two suits being identical in all respects except in the federal suit only the insurers were impleaded as defendants.
The federal case was tried by a jury in July of 1963, but prior to the trial Marcus Johnson’s claim was dismissed because it .was below the minimum jurisdictional amount of the court. The matter was proceeded with on Mrs. Johnson’s claim for damages, and after a complete and full trial, the jury brought in a verdict in Mrs. Johnson’s favor for $20,000 against Lumber-mens Mutual Casualty Company. The verdict dismissed Mrs. Johnson’s claim as against the other defendant. The jury found that each of the drivers was negligent; that the negligence of Mrs. Baudier was the proximate cause of the accident, but that the negligence of Berthelot was not. From the judgment predicated on the verdict, Lumbermens Mutual Casualty Company appealed. Mrs. Johnson took an appeal from the judgment insofar as it absolved Fidelity & Casualty Company from liability. The U. S. Court of Appeals, Fifth Circuit, affirmed the judgment. (See 331 F.2d 711).
After the adjudication of Mrs. Johnson’s claim in the federal court, Marcus Johnson proceeded with the prosecution of the instant suit on his claim against the five defendants he impleaded herein, and after a trial in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, he recovered judgment in solido against Berth-elot and Fedelity & Casualty Company for the sum of $1511.05; the judgment dismissed the suit as against Mr. and Mrs. Baudier and their insurer, Lumbermens Mutual Casualty Company. Berthelot and his insurer appealed from the judgment; plaintiff answered the appeal seeking to have the judgment amended so as to cast the defendants who were dismissed from the suit and to have the amount of the judgment increased.
Therefore, we have before us litigation wherein the federal courts and the state trial court differed as to which driver was negligent. The plaintiffs charged each with several specific acts of negligence, and in answer each set of defendants averred that their driver was free from negligence and that the cause-of the accident was the negligence of the other driver.
No evidence was adduced in the court below, all counsel submitting the case on the mimeographed record of Mrs. Johnson’s case in the U. S. Court of Appeals, Fifth Circuit, docket 21019, the trial judge below basing his conclusions on the testimony presented to the jury on the trial in the U. S. District Court.
We first address our attention to the exception of res judicata and the plea of collateral estoppel or estoppel by judgment filed by Berthelot and Fidelity & Casualty Company of New York which the lower court overruled but which are reurged before us by the pleaders. The supporting theory is that the result reached by the federal court on Mrs. Johnson’s claim must be the basis for a similar finding on the husband’s demand. R.C.C. art. 2286 provides :
“The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand *180 must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.”
Res judicata cannot apply in this instance as two of the ingredients required by the above codal article are lacking. The thing demanded is not founded on the same cause of action, and the demand is not between the same parties.
This court had occasion to discuss the nature of “collateral estoppel” in Shell Oil Company v. Texas Gas Transmission Corp., La.App., 176 So.2d 692. We said:
“The term ‘collateral estoppel’ is relatively new, having been first used by the American Law Institute, Restatement, Judgments § 68, comment a (1942). The doctrine is not new in the common law where it is referred to under other names. Collateral estoppel is that aspect of res judicata concerned with the effect of a final judgment on subsequent litigation of a different cause of action between the same parties involving the same issue or issues determined in the initial action. Insofar as the same may be applicable here, the doctrine is to the effect that a fact actually litigated by the parties, and determined in an earlier suit by a valid and final judgment, is conclusive as between those parties and their privies in any later suit even though the cause of action was not the same in both suits, provided that the determination of fact was essential to the judgment in the earlier suit. Developments in the Law— Res Judicata, 65 Harv.L.Rev. 818, 840 (1952); Comment, 35 Tul.L.Rev. 609, 610-11 (1961); see Cromwell v. County of Sac, 94 U.S. 351, 352-353, 24 L.Ed. 195; Ehrenzweig, Conflict of Laws § 65 (1959); Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 3 (1942).
“We are satisfied that collateral estoppel is not part of the Louisiana doctrine of res judicata. * * * ”
Several cases are cited by counsel in connection with their argument on the plea of estoppel. Richards v. Crescent Towing & Salvage Co., La.App., 115 So.2d 894, is not apposite. Therein the plea of res ju-dicata was maintained against the action of a tugboat deckhand in the state court for damages after the same demand had been adjudicated in a federal court. It is quite noticeable that the parties and the causes of action were the same.
Quinette v. Delhommer, 165 So.2d 900, decided by this court is without effect. We were overruled by the Supreme Court. See 247 La. 1121, 176 So.2d 399.
Bowman v. Liberty Mutual Insurance Co., La.App., 149 So.2d 723, seems to be adverse to the contention advanced. In that case the court sustained a plea of res judicata against/the demand for damages by a wife who nad previously asserted the same demand in a federal court, but the plea was held to be ineffective as against the demand for damages by the husband on behalf of the minor child who had been injured in the accident which claim had not been made before.
The pleas of res judicata and estoppel are without merit.
Counsel for Berthelot and Fidelity & Casualty Company of New York argue that “a choatic situation of judicial duplication could result” if the findings of the state court differed from the result in the federal case.
In Hinchee v. Long Bell Petroleum Co., 235 La. 185, 103 So.2d 84, our Supreme Court stated that while the holdings of federal courts are persuasive and entitled to our respect, they will not be followed in the face of positive jurisprudence of this state to the contrary. In Mrs. Johnson’s case the U. S. Circuit Court of Appeals did not examine into the facts, merely stating “but the evidence is such * * * to support the verdict as the jury has returned it.” The appellate court was inhibited from making a re-examination of the facts found *181 by the jury by the provisions of the U. S. Constitution. See Amendment VII.
In Silverman v. Travelers Insurance Company, 277 F.2d 257, the U. S. Circuit Court of Appeals, Fifth Circuit, stated: “Each federal jury determines the facts in the case before it and, under the Seventh Amendment, the jury’s verdict cannot be re-examined; * * *” Thus on the federal appeal there was no review of the facts or the correctness of the jury’s conclusions.
The jurisdiction of the Courts of Appeal in Louisiana is quite different. Article 7 § 29, Const. 1921, provides that said courts shall have appellate jurisdiction on both the law and the facts, except where the appeal is limited to questions of law only by other parts of the Constitution. In passing: on an appeal such as is presented in the instant case, we are empowered to re-examine, reappraise and re-evaluate the evidence adduced in the case whether passed upon by the trial judge alone or by a jury.
The instant case must turn on a question of fact.
A description of the locus in quo is first necessary. Veterans Highway at the time of the accident was a paved strip accommodating a two-way traffic movement and running from New Orleans westward to Metairie. Paralleling the highway on its lake side there was a drainage canal. Green Acres Road intersects Veterans Highway and on said road a bridge spans the canal. Berthelot was proceeding with his truck from the direction of the lake toward the river and crossed the above-mentioned bridge; upon reaching the edge of the highway he brought his truck to a stop. He explained his observations and actions this way:
“When I got to the foot of the bridge leading across Veterans Highway, there’s a yield-the-right-of-way sign there, just off of the bridge, and as I got to that point, there was some traffic coming that I had to stop for, so I stopped, and while I was stopped a few automobiles passed, and on my left there was a dump truck fixing to turn into the bridge with a load of sand, that was working with me, and he stopped there waiting for me to get off of the bridge. Well, I looked over behind him to see if there was any traffic coming, trying to come around him, and I didn’t see any. I looked to my right, and I saw two more automobiles, one of them was pretty close, and the other was about 300 or 400 feet behind the second one — I’d say about 300 or 400 feet behind the first automobile, which I figured after the first automobile would go by, I was going to cross the highway. Well, after the first automobile passed, I looked again for the second automobile, and it was a little closer, but it was far enough for me to make the crossing of the road, so I proceeded to cross the road.”
The second car Berthelot saw about 300 or 4Ó0 feet away was the Baudier car which was travelling toward New Orleans, Mrs. Johnson being a passenger therein. Mrs. Baudier and Mrs. Johnson both saw the Berthelot truck on the bridge, moving slowly and before it stopped. Mrs. Baudier’s statement is that when she observed the truck her car was some distance away from Green Acres Road but she could not estimate how far. Mrs. Johnson estimated that when she saw the truck moving “slowly on the bridge” the Baudier car was a block or a block and a half away from it. After seeing the truck, Mrs. Baudier continued forward and there is no evidence that she exceeded the permissive speed limit of 25 miles per hour.
After Mrs. Baudier first sighted the truck on the bridge she paid no further attention to it. Nor did Berthelot pay any heed to the Baudier car after he proceeded to cross the highway when he thought it “was far enough for him to make the crossing.”
Each driver was oblivious of progress of the other car. Only a split second before the accident did Mrs. Baudier catch a *182 glimpse of the hood of the truck. Berthelot did not see the Chevrolet sedan until after it had struck the right-hand side of his truck and only then upon his alighting from the truck to see what had happened.
The testimony reflects that both vehicles were in Green Acres Road when they came to rest after the accident and counsel for appellants suggest that an unfavorable inference should be drawn against Mrs. Bau-dier. Counsel considered it quite strange that Mrs. Baudier’s automobile shtíuld be a car-length or so into Green Acres Road. We think Mrs. Baudier explained this circumstance. She stated that when she caught the glimpse of the hood of the truck she swerved her car to the right thus accounting for its position after the accident.
The truck Berthelot drove was a ponderous vehicle 20 feet long, having 18 forward speeds. Berthelot claims he endeavored to negotiate the 25-foot wide highway at 10-15 miles per hour. Assuming that the truck travelled at the lower rate of 10 miles per hour it would be moving 14.6 feet per second and to reach the point where the accident happened, i. e., about three-quarters of the way across the 25-foot wide highway, would have taken less than two seconds. If we assume that the speed was at the higher rate, or 15 miles per hour, the truck would be moving 21.9 feet per second, and it would have taken less than a second to reach the point of impact. Mrs. Baudier’s automobile, travelling at 25 miles per hour, or at the rate of 36.5 feet per second, must have been in near proximity to the intersection when the truck started its ill-fated crossing. She was less than 70 feet away. According to accredited speed charts, the braking distance for a car travelling at 25 miles per hour is 86 feet.
All of this adds up to the fact that because neither driver paid the slightest attention to the other vehicle the crash occurred. Had either been vigilant or had taken the precaution of ascertaining the movement of the other vehicle after first having seen it he or she could have resorted to some effective steps to avoid a crash. We cannot understand why Mrs. Baudier failed to see the large truck as it entered and proceeded across the highway in her path. She knew nothing of its presence in the intersection until her passenger, Mrs. Johnson, warned her thereof.
We quote what we said in Theriot v. Marquette Casualty Company, La.App., 111 So.2d 799:
“One driving a motor vehicle is under the duty to look at all times and he must see what he can see and in legal contemplation does see, and his failure to observe what could have been seen by exercising due diligence will not absolve him from liability for resulting injury to others.”
We said in Joffre v. Ike Haggert Machine Works, La.App., 100 So.2d 557:
“ * * * Thg jaw imposes upon one who operates a motor vehicle the duty of looking and being at all times vigilant. This is a duty which never ceases.”
Under the facts as we see them, in this case Berthelot’s claim to a pre-emptive right to negotiate the highway because he entered it first does not impress us to any extent. He was confronted with a “Yield” traffic sign. He should have known that his huge truck could not at the speed it was moving cross the highway in advance of the other vehicle. Before a motorist has the right to make claim to a pre-emptive right of way certain requirements are incumbent upon him. We are convinced that when Berthelot drove into the intersection the Baudier car was not as far away as Berthelot pretended it to be from the witness stand.
In Rhodus v. Allstate Insurance Company, La.App., 192 So.2d 226, we said:
“ * * * The jurisprudence is so well settled that citation of authorities is unnecessary to the effect that pre-emption does not result from merely entering an intersection first. In order to preempt *183 an intersection the motorist must show that he made a lawful entry therein after' ascertaining that oncoming traffic is sufficiently far removed as to permit a safe passage and under the bona fide belief and expectation that he can negotiate a crossing with safety.”
In Launey v. Smith, 192 So.2d 154, this court said:
“ * * * In these circumstances courts have often said that pre-emption does not result from merely entering the intersection first. In order to pre-empt an intersection the driver of the car who claims to have pre-empted it must show that he entered it sufficiently in advance of the car on the intersecting roadway to permit a safe passage and under the belief and with the expectation that he can safely negotiate a crossing. Ehtor v. Parish, La.App., 86 So.2d 543.”
The only conclusion we can reach is that the combined and concurrent negligence of both drivers was the proximate cause of the accident. Multiple charges of negligence are leveled and proven against each, among which are failure to maintain a proper lookout, failure to keep his or her vehicle under proper control, and failure to see what should have been seen.
Mr. Johnson’s expenditures in connection with his wife’s medical expenses, etc., were stipulated to be $1511.05. It was also agreed and stipulated that Mr. and Mrs. Baudier and Lumbermens Mutual Casualty Company are entitled to a credit of $500 on any judgment that may be rendered against them.
Plaintiff in an answer to the appeal prays that the amount of his judgment be increased by $325 which represents the fees he paid two medical experts for testifying at the trial of Mrs. Johnson’s case in the federal court. We know of no law in this state and our attention has not been directed to any which gives the plaintiff the right to recover for the expert witnesses’ fees paid in another case. It seems to us that these should have been treated as court costs by the federal court.
Mr. and Mrs. Baudier and Lumber-mens Mutual Casualty Company assumed the position of third-party plaintiffs and claimed of the other defendants judgment in the amount of any judgment that may be rendered against the third-party plaintiffs. We think that under this demand the third-party plaintiffs are entitled to a judgment in enforcement of the contribution contemplated by R.C.C. art. 2103 as against the other defendants.
In view of what we have stated above, the judgment appealed from should be and is recast so as to read and provide as follows:
It is ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Marcus Johnson, and against all defendants, in solido, for the sum of $1011.05 and against Lloyd J. Berthelot and Fidelity & Casualty Company of New York, in solido, for $500, with legal interest on both amounts from date of judicial demand until paid and for all costs in the lower court.
It is further ordered, adjudged and decreed that there be judgment in favor of third-party plaintiffs, Mr. and Mrs. Bau-dier and Lumbermens Casualty Company of Chicago, against the other defendants (third-party defendants) in enforcement of the contribution contemplated by R.C.C. art. 2103.
As recast above, the judgment appealed from is affirmed. Costs of appeal are to be defrayed by Mr. and Mrs. Baudier and Lumbermens Mutual Casualty Company.
Recast and affirmed.