BARHAM, Justice
(dissenting).
I disagree with the majority, being of the opinion that the issue presented here has been correctly disposed of in the following cases: Achee v. Caillouet, 197 La. 313, 1 So. 2d 530; Barnsdall Oil Co. v. Miller, 224 La. 216, 69 So.2d 21; Union Oil Company of California v. Touchet, 229 La. 316, 86 So.2d 50; Elkins v. Roseberry, 233 La. 59, 96 So.2d 41; Hinchee v. Long Bell Petroleum Co., 235 La. 185, 103 So.2d 84. It is clearly the law of these cases that the execution of a mineral lease by a landowner will not interrupt the running of prescription against the mineral servitude owner unless it is established affirmatively by the mineral owner that the execution of that mineral lease was also for the mineral owner’s benefit.
The majority apparently recognizes and admits that the execution of a mineral lease by a landowner will not interrupt the running of prescription against the mineral owner. However, the majority proposes, it seems, that if minerals are actually pro *1068 duced under a lease executed only by the landowner, this production will interrupt the running of prescription against the mineral owner. Although the majority has attempted to make a distinction between the effect of leasing by the landowner and the effect of production under a lease from the landowner, I find it to be a distinction without a difference.
In fact, the majority opinion contradicts its dependence upon this distinction. It states: “ ‘The settled rule is that no act on the part of a landowner will have the effect of interrupting prescription and extending the life of a mineral interest unless it is shown that there was a clear intention on the part of the landowner to achieve that result. * * * ’ LeBleu v. LeBleu, La.App., 206 So.2d 551 (1967).” (Emphasis here and elsewhere is mine.)
It states further: “Plaintiffs’ silence, under the facts of this case, indicates that they acquiesced in the action of the defendants in executing the leases. * * * It follows that the voluntary acts of defendants [execution of the leases] were for the benefit of the plaintiffs; they transacted the business of other persons. Thus a quasi contract came into existence between plaintiffs and defendants. * * * ”
The majority would establish the plaintiffs’ rights in quasi contract, and hold that plaintiffs’ inaction and silence (they slept on their right to claim an interest in the production for 16 years and made no use-of the servitude) are circumstances which “* * * have clearly and unequivocally shown an intention to ratify the leases executed by defendants”. If the majority is-going to found its result on the landowners’ leases and the plaintiffs’ subsequent ratification (the leases are the contracts upon which the majority founds the so-called, “quasi contractual” rights), then what does. production have to do with the final determination ?
Plere the producer of oil acted only under the authority of the landowners and for the landowners’ benefit. The lessee-producer can in no fashion be treated as a “stranger” so as to make applicable Civil Code Article-794, which reads in part: “The servitude is preserved to the owner of the estate to-which it is due, by the use which any one, even a stranger, makes of it, provided it be-used as appertaining to the estate. * * * This lessee, of course, was acting in behalf of the owners of the land (“servient estate”) and against the owners of the minerals (“dominant estate”).
Furthermore, even without need to resort to jurisprudence, the Civil Code is control-' ling and dispositive of this case: “When the-prescription of non-usage is opposed to the-owner of the estate to whom the servitude-is due, it is incumbent upon him [mineral' owner] to prove that he, or some person in-his name, has made use of this servitude as. *1070 appertaining to his estate [his minerals] -during the time necessary to prevent the •establishment of the prescription.” La.Civ. Code Art. 804. The plaintiffs’ allegations .are insufficient to admit of the proof necessary to discharge this burden.
I find no merit in the stated theory of the Court of Appeal, which may have been persuasive to the majority, that a holding that production in the instant case did not interrupt prescription would encourage a ■type of lawless exploration and production. True, the landowners acted illegally and .received payments not due them from the •date of lease, 1957, until prescription tolled, 1962. After 1962, however, these prior acts .are to be no more condemned than are the acts of an adverse possessor who may be a trespasser and a thief as he uses the land and harvests the timber, crops, and fruits of another for 30 years, but who then becomes a respected landowner by reason of our legal provision for the running of 'liberative prescription. Under the codal articles dealing with extinguishment of servitudes, under a well founded line of jurisprudence, and even in equity, I am of the -opinion that the district court was correct in sustaining the exception of no cause of .action, and that the Court of Appeal and -.the majority have erred.
I respectfully dissent.
BARHAM, J., is of the opinion a rehearing should be granted.